*Please docket as
"answer to
Complaint"
received from
Unknown Doe*

June 4, 2012

The Honorable Berle M. Schiller
United States District Judge
United States Courthouse
601 Market Street, Room 13613
Philadelphia, Pennsylvania 19106

Re:   Malibu Media, LLC v. John Does 1-15
      United States District Court for the Eastern District of Pennsylvania
      Docket No.: 2:12-cv-02090

Your Honor:

I received a letter from Comcast advising me that my IP address is listed as one of the John Does in the above captioned case. I was shocked and outraged on receiving this information because I have never knowingly downloaded any movie illegally and certainly have never uploaded any. Moreover, until I began investigating the matter after receiving Comcast's notice, I didn't know what a BitTorrent was or even that such a thing existed. Finally, I was at work when Malibu Media reports that my ISP was logged. I did some internet research and am attaching some material that I hope will be helpful as you evaluate this case.

On examining the number of Malibu Media cases filed in Pennsylvania (Attachment 1) and nationwide (Attachment 2), it appears that the generation of lawsuits to collect settlements is an important component of the plaintiff's business model as discussed by Cashman (Attachment 3, "Malibu Media, LLC—New "Copyright Troll" on The Block"). If a production is found to be intended as much to generate revenue through instigation of litigation as through sales and royalties, is it still considered a "useful art" for purposes of copyright protection? Mr. Cashman's article also describes his analysis of Malibu Media's perceived lineage.

I am also attaching articles discussing the issue of improper joinder in previous cases including findings that Malibu Media's local counsel distorted the apparent case volume placed on the court system and evaded paying appropriate filing fees by this means. (Attachment 4, "Judge Throws out Mass John Doe Porn Copyright Lawsuits"; Attachment 5, MISSION ACCOMPLISHED? New York's Split Southern Court"). There is also a ruling from Arizona regarding the concept of Joinder in BitTorrent cases that may be of interest (Attachment 6, "New Arizona Rule: You are only properly joined with those you upload to or download from").

The Honorable Berle M. Schiller
Re:     Malibu Media, LLC v. John Does 1-15
Page 2


Lastly, I am attaching several commentary regarding the disposition of such cases in different courts (Attachment 7, "UPDATE 3:  More of Mike Meier bittorrent cases consolidated"; Attachment 8, "Virgina Judge Severs and Dismisses ALL Malibu Media, LLC Bittorrent Cases"; Attachment 9, "New York judge blasts trolls' practices, recommends banning mass bittorrent lawsuits in that district";  and Attachment 10, "Florida Judge consolidates and freezes ALL SMALLER BITTORRENT CASES for plaintiff attorney").

In several cases I have provided copies of the court decisions on which the commentary noted above were based.  I apologize for the abundance of reading material; I wish to minimize any burden on your part to locate the primary source documents.  That said, there is much more information on the internet regarding Bittorrent cases and Malibu Media in particular than is practical for me to send you.  I hope you find the recent developments discussed in the various attachments helpful as you begin to frame this case in your mind.

Respectfully,


A John Doe

enclosures (10)

 **Dockets & Filings** BETA   Party Name: Malibu Media, LLC

Filed In: Pennsylvania   Judge: Any
Doc Filter: All Case Filings   Filed After: All Dates

[ Search ]   Advanced Search

Case Type: All Types
Filed Before: Now

Justia > Dockets & Filings > Third Circuit > Pennsylvania > matching Malibu Media, LLC

**NEW - Receive Justia's FREE Daily Newsletters of Opinion Summaries** for the US Supreme Court, all US Federal Appellate Courts & the 50 US State Supreme Courts and Weekly Practice Area Opinion Summaries Newsletters. **Subscribe Now**

## Cases filed in Pennsylvania matching "Malibu Media, LLC "

Cases 1 - 17 of 17 🗔 RSS FEED

View as Table

Justia on    Follow

### MALIBU MEDIA, LLC v. JOHN DOE 1-7

Filed: April 19, 2012 as 2:2012cv02093 Updated: May 20, 2012 00:33:46

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOE 1-7
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

·1    +1078

👍 Like  📊 107,889 people like this

### MALIBU MEDIA, LLC v. JOHN DOES 1-14

Filed: April 19, 2012 as 2:2012cv02084 Updated: May 20, 2012 00:33:42

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-14
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

Today on Verdict
**The Citizens United Case and Jeffrey Toobin's Account of it in The New Yorker: An Interesting Story but an Incomplete Argument**

Justia columnist and U.C. Davis
law professor Vikram Amar
comments on legal journalist
Jeffrey Toobin's recent article in
The New Yorker regarding the highly
controversial Citizens United case, holding
that not just persons, but also
corporations, have a First Amendment
right to spend money to advocate for or
against candidates for election.

**By Vikram David Amar**

### MALIBU MEDIA, LLC v. JOHN DOES 1-15

Filed: April 19, 2012 as 2:2012cv02077 Updated: May 20, 2012 00:33:37

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-15
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

Ask a Lawyer
Question:
Enter your question here. e.g., Do I need a ban
lawyer?

[ Ask Question ]

Legal Answers Leaders

### MALIBU MEDIA, LLC v. JOHN DOES 1-15

Filed: April 19, 2012 as 2:2012cv02090 Updated: May 20, 2012 00:33:41

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-15
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

 Level 5
**Maxwell Charles Livingston Esq.**
39 Answers
1780 Points

 Level 5
**Kimberly K. Schreiber**
31 Answers
1550 Points

### MALIBU MEDIA, LLC v. JOHN DOES 1-16

Filed: April 19, 2012 as 2:2012cv02078 Updated: May 20, 2012 00:33:43

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-16
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

 Level 6
**Andrew Bresalier**
26 Answers
750 Points

 Level 5
**Jerry Lutkenhaus**
17 Answers
725 Points

 Level 4
**David A Black**
14 Answers
700 Points

View More

### MALIBU MEDIA, LLC v. JOHN DOES 1-16

Filed: April 19, 2012 as 2:2012cv02092 Updated: May 19, 2012 00:56:26

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-16
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

**Lawyers - Get Points!**
Answer Questions and Get Featured Here
Recent Legal Answer

What dose it mean to have pititon for
proceeding in civil case without payment
of fees or costs .

Attachment 1

Case 2:12-cv-02090-BMS Document 9 Filed 06/06/12 Page 6 of 88

### MALIBU MEDIA, LLC v. JOHN DOES 1-16

Filed: April 19, 2012 as 5:2012cv02091 Updated: May 19, 2012 00 56.40

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-16
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-18

Filed: April 19, 2012 as 2:2012cv02095 Updated: May 19, 2012 00:56:28

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-18
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-18

Filed: April 19, 2012 as 2:2012cv02096 Updated: May 19, 2012 00 56:25

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-18
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-22

Filed: April 19, 2012 as 2:2012cv02083 Updated: May 20, 2012 00:33:44

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-22
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-22

Filed: April 19, 2012 as 5:2012cv02088 Updated: May 20, 2012 00·34:19

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-22
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-25

Filed: April 19, 2012 as 2:2012cv02094 Updated: May 20, 2012 00:33:39

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-25
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-10

Filed: February 8, 2012 as 2:2012cv00666 Updated: May 2, 2012 23.32 01

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-10
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights



I am afraid this question does not provide sufficient details to warrant an intelligent answer. You would need to provide more details in order for an attorney to answer this question.... [more]

Answered by Jerry Lutkenhaus

**Lawyers - Answer Questions**
Get Your Answer Featured Here!
Connect with Justia

 **Follow @Justia.com**
MT @AdamLiptak Congrats to First Amendment champion @TonyMauro, new Chair of @RCFP - http://t.co/wzXIJBX5



**Justia** on Facebook
**Justia**  Like

107,889 people like Justia.

   

Find a Lawyer
Legal Issue or Lawyer Na
Pennsylvania    Search

**Lawyers
in Pennsylvania**



**Leslie Anne Mitnick**
Injury Law
Yardley, PA



**Allen M. Silk**
Arbitration / Mediation, Business Law, Estate Planning
Lawrenceville, NJ



**Timothy G. Lenahan**
Car Accidents, Education Law, Elder Law, Insurance Bad Faith, Medical Malpractice, Products Liability, Workers' Compensation
Scranton, PA



**Peter Pinnola**
Business Law
Philadelphia, PA



**Matthew Dempsey**
Car Accidents, General Civil, Injury Law, Workers' Compensation
Scranton, PA

See More Lawyers

**Lawyers - Get Listed Now!**
Get a free full directory profile listing

### MALIBU MEDIA, LLC v. JOHN DOES 1-11

Filed: February 8, 2012 as 2:2012cv00667 Updated: May 2, 2012 23:32:01

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-11
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-15

Filed: February 8, 2012 as 2:2012cv00664 Updated: May 2, 2012 23:32 01

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-15
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-17

Filed: February 8, 2012 as 2:2012cv00665 Updated: May 2, 2012 23:32:01

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-17
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-22

Filed: February 8, 2012 as 2:2012cv00668 Updated: May 2, 2012 23:32:01

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-22
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

The Justia Federal District Court Filings & Dockets site republishes public litigation records retrieved from the US Federal District Courts. These filings and docket sheets should not be considered findings of fact or liability, and do not necessarily reflect the view of Justia.

© 2007-2012 Justia :: Company :: Terms of Service :: Privacy Policy :: Contact Us

Justia.com   Lawyer Directory   Legal Answers   Law Blogs   **Dockets & Filings**   more ▼

SI

 **Dockets & Filings** BETA

Party Name: **Malibu Media, LLC**

Filed In: All Courts   Judge: Any
Doc Filter: All Case Filings   Filed After: All Dates

| Search | Advanced Search

Case Type: All Types
Filed Before: Now

Justia > Dockets & Filings > matching "Malibu Media, LLC"

**NEW - Receive Justia's FREE Daily Newsletters of Opinion Summaries** for the US Supreme Court, all US Federal Appellate Courts & the 50 US State Supreme Courts and Weekly Practice Area Opinion Summaries Newsletters. **Subscribe Now**

## Cases by State

| California | Florida | Pennsylvania |
| Colorado | Maryland | Virginia |
| District of Columbia | New York | |

### Cases by Circuit

| Second Circuit | Ninth Circuit | D.C. Circuit |
| Third Circuit | Tenth Circuit | |
| Fourth Circuit | Eleventh Circuit | |

### Cases filed matching "Malibu Media, LLC "

Cases 21 - 40 of 110 ⊠ RSS FEED

**View as Table**

#### MALIBU MEDIA, LLC v. Does 1-15

Filed: May 13, 2012 as 1:2012cv00766 Updated: May 27, 2012 21:30:48

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** John Does 1-15
**Cause of Action:** Copyright Infringement
**Court:** D.C. Circuit > District of Columbia > District Of Columbia District Court
**Type:** Intellectual Property > Copyrights

#### Malibu Media, LLC v. Unknown

Filed: May 10, 2012 as 2:2012cv01261 Updated: May 24, 2012 04:34:28

**Plaintiff:** Malibu Media, LLC
**Defendant:** Unknown
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Eastern District Court
**Type:** Intellectual Property > Copyrights

#### Malibu Media, LLC v. Unknown

Filed: May 10, 2012 as 2:2012cv01260 Updated: May 24, 2012 04:34:28

**Plaintiff:** Malibu Media, LLC
**Defendant:** Unknown
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Eastern District Court
**Type:** Intellectual Property > Copyrights

#### Malibu Media, LLC v. Unknown

Filed: May 10, 2012 as 2:2012cv01255 Updated: May 24, 2012 04:34:28

**Plaintiff:** Malibu Media, LLC
**Defendant:** Unknown
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Eastern District Court
**Type:** Intellectual Property > Copyrights

#### Malibu Media, LLC v. Unknown

Filed: May 10, 2012 as 2:2012cv01262 Updated: May 24, 2012 04:34:28

**Plaintiff:** Malibu Media, LLC
**Defendant:** Unknown
**Cause Of Action:** Copyright Infringement

Justia on    Follow

·1   ▓▓▓ +1078

👍 Like   ▐ 107,888 people like this

Today on Verdict
**The Citizens United Case and Jeffrey Toobin's Account of it in The New Yorker: An Interesting Story but an Incomplete Argument**

Justia columnist and U.C. Davis law professor Vikram Amar comments on legal journalist Jeffrey Toobin's recent article in The New Yorker regarding the highly controversial Citizens United case, holding that not just persons, but also corporations, have a First Amendment right to spend money to advocate for or against candidates for election.

**By Vikram David Amar**

Ask a Lawyer
Question:
Enter your question here. e.g., Do I need a ban lawyer?

| Ask Question |

Legal Answers Leaders

 Level 5
**Maxwell Charles Livingston Esq.**
39 Answers
1780 Points

 Level 5
**Kimberly K. Schreiber**
31 Answers
1550 Points

 Level 6
**Andrew Bresalier**
26 Answers
750 Points

 Level 5
**Jerry Lutkenhaus**
17 Answers
725 Points

 Level 4
**David A Black**
14 Answers
700 Points

View More

**Lawyers - Get Points!**
Answer Questions and Get Featured Here
Recent Legal Answer

On probation and got a p.i charge and was on probation for intimadation and they put a warrent out for me what do i do?

**Court:** Ninth Circuit > California > Eastern District Court
**Type:** Intellectual Property > Copyrights

### Malibu Media, LLC v. John Does 1 through 35
Filed: May 9, 2012 as 3:2012cv01135 Updated: May 23, 2012 21:34:55
**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 35
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights

### Malibu Media, LLC v. John Does 1 through 10
Filed: April 30, 2012 as 3:2012cv01051 Updated: May 14, 2012 06:04:32
**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 10
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights

### Malibu Media, LLC v. John Does 1 through 11
Filed: April 30, 2012 as 3:2012cv01056 Updated: May 14, 2012 06:04:32
**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 11
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights

### Malibu Media, LLC v. John Does 1 through 11
Filed: April 30, 2012 as 3:2012cv01061 Updated: May 14, 2012 06:04:32
**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 11
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights

### Malibu Media, LLC v. John Does 1 through 12
Filed: April 30, 2012 as 3:2012cv01059 Updated: May 14, 2012 06:04:32
**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 12
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights

### Malibu Media, LLC v. John Does 1 through 19
Filed: April 30, 2012 as 3:2012cv01049 Updated: May 14, 2012 06:04:32
**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 19
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights

### Malibu Media, LLC v. John Does 1 through 7
Filed: April 30, 2012 as 3:2012cv01052 Updated: May 14, 2012 06:04:32
**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 7
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights


get some bond money together and contact a criminal lawyer in your area.... [more]
Answered by Terrence Rubino

**Lawyers - Answer Questions**
Get Your Answer Featured Here!
Connect with Justia

 Follow @Justiacom

MT @AdamLiptak Congrats to First Amendment champion @TonyMauro, new Chair of @RCFP · http://t.co/vxXUBXS

 Justia on Facebook
Justia    Like

107,888 people like Justia




Find a Lawyer
Legal Issue or Lawyer Na
Woodbridge, NJ        [Search]
**Lawyers**
**near Woodbridge, New Jersey**

**Michael C. Rose Esq.**
Car Accidents, Criminal Law, Injury Law, Medical Malpractice, Products Liability
Freehold, NJ



**Khushbu Patel**
Employment Law
East Brunswick, NJ



**Nicholas Renzi**
Car Accidents, Constitutional Law, Injury Law, Insurance Bad Faith, Medical Malpractice, Products Liability, Workers' Compensation
Philadelphia, PA



**Rhonda Ellin Kay**
Car Accidents, Civil Rights, Education Law, Injury Law, Legal Malpractice, Medical Malpractice
New York, NY



**Steven Siegler**
Civil Rights, Employment Law
East Brunswick, NJ

See More Lawyers

**Lawyers - Get Listed Now!**
Get a free full directory profile listing

**Malibu Media, LLC v. John Does 1 through 8**

Filed: April 30, 2012 as 3:2012cv01054 Updated: May 14, 2012 06:04:32

**Plaintiff:** Malibu Media, LLC
**Defendant:** John Does 1 through 8
**Cause Of Action:** Copyright Infringement
**Court:** Ninth Circuit > California > Southern District Court
**Type:** Intellectual Property > Copyrights

**MALIBU MEDIA, LLC v. JOHN DOE 1-7**

Filed: April 19, 2012 as 2:2012cv02093 Updated: May 20, 2012 00:33:46

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOE 1-7
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

**MALIBU MEDIA, LLC v. JOHN DOES 1-14**

Filed: April 19, 2012 as 2:2012cv02084 Updated: May 20, 2012 00:33:42

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-14
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

**MALIBU MEDIA, LLC v. JOHN DOES 1-15**

Filed: April 19, 2012 as 2:2012cv02077 Updated: May 20, 2012 00:33:37

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-15
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

**MALIBU MEDIA, LLC v. JOHN DOES 1-15**

Filed: April 19, 2012 as 2:2012cv02090 Updated: May 20, 2012 00:33:41

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-15
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

**MALIBU MEDIA, LLC v. JOHN DOES 1-16**

Filed: April 19, 2012 as 2:2012cv02078 Updated: May 20, 2012 00:33:43

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-16
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

**MALIBU MEDIA, LLC v. JOHN DOES 1-16**

Filed: April 19, 2012 as 2:2012cv02092 Updated: May 19, 2012 00:56:26

**Plaintiff:** MALIBU MEDIA, LLC
**Defendant:** JOHN DOES 1-16
**Cause Of Action:** Copyright Infringement
**Court:** Third Circuit > Pennsylvania > Eastern District Court
**Type:** Intellectual Property > Copyrights

### MALIBU MEDIA, LLC v. JOHN DOES 1-16

Filed: April 19, 2012 as 5:2012cv02091 Updated: May 19, 2012 00:56:40

**Plaintiff:** MALIBU MEDIA, LLC

**Defendant:** JOHN DOES 1-16

**Cause Of Action:** Copyright Infringement

**Court:** Third Circuit > Pennsylvania > Eastern District Court

**Type:** Intellectual Property > Copyrights

« prev  1  **2**  3  4  5  6  next »

The Justia Federal District Court Filings & Dockets site republishes public litigation records retrieved from the US Federal District Courts. These filings and docket sheets should not be considered findings of fact or liability, and do not necessarily reflect the view of Justia.

© 2007-2012 Justia :: Company :: Terms of Service :: Privacy Policy :: Contact Us

Attachment 3

# Federal Computer Crimes

## TorrentLawyer™, a Cashman Law Firm, PLLC Blog – Where Computer Law & Criminal Law Meet

**Feeds:**
Posts
Comments

# Malibu Media, LLC — New "Copyright Troll" on the Block.

March 6, 2012 by houstonlawy3r

There seems to be a new production company who has decided that it is a better business model for them to start suing internet users (e.g., copyright trolling) rather than selling their cheap flicks on the internet one by one. The company name is *Malibu Media, LLC,* and while the actual "film" allegedly downloaded probably varies from case-to-case, it appears as if "Tiffany Teenagers in Love" seems to be the primary title they are using in their lawsuits.

What surprises me is that while this is a new "troll" (using the term loosely,) the local counsel they are using suggests to me that the same entity *[behind the Patrick Collins, Inc., K-Beech, Inc., NuCorp, Inc., Raw Films, Ltd., Zero Tolerance, etc. cases]* is also behind this case. In other words, this is simply a new client climbing on the bandwagon looking to cash in on the ongoing mass extortion scheme. The rules, however, have not changed.

Pasted below is a list of the cases, separated by the court in which the case was filed in, and who the local counsel is. I have dealt with each one of these guys before, so as far as I am concerned, this is just one more troll to add to the list of companies who are suing defendants. I have included the newer filings of Raw Films, Ltd. to show that these are the same attorneys.

California Central District Court – Adam M. Silverstein of Cavalluzzi & Cavalluzzi

*Malibu Media LLC v. John Does 1-10 (Case no. 2:12-cv-01647)*
*Malibu Media LLC v. John Does 1-10 (Case no. 2:12-cv-01675)*
*Raw Films, Ltd. v. John Does 1-10 (Case no. 2:12-cv-01653)*

Virginia Eastern District Court – David / Wayne O'Bryan of O'Bryan Law Firm

Malibu Media, LLC — New "Copyright Troll" on the Block. « Federal Computer Crimes                    1

*Malibu Media, LLC v. John Does 1-26 (Case no. 1:12-cv-00160)*
*Malibu Media, LLC v. John Does 1-26 (Case no. 1:12-cv-00161)*
*Malibu Media, LLC v. John Does 1-15 (Case no. 1:12-cv-00163)*
*Malibu Media, LLC v. John Does 1-27 (Case no. 1:12-cv-00165)*
*Malibu Media, LLC v. John Does 1-08 (Case no. 1:12-cv-00166)*

## California Southern District Court – Adam M. Silverstein of Cavalluzzi & Cavalluzzi

*Malibu Media, LLC. v. John Does 1-13 (Case no. 3:12-cv-00358)*
*Malibu Media, LLC v. John Does 1-25 (Case no. 3:12-cv-00362)*
*Malibu Media, LLC. v. John Does 1-15 (Case no. 3:12-cv-00369)*
*Raw Films, Ltd. v. John Does 1-11 (Case no. 3:12-cv-00368)*

## Colorado District Court – Jason Aaron Kotzker of Kotzker Law Group

*Malibu Media, LLC v. John Does 1-29 (Case no. 1:12-cv-00397)*
*Malibu Media, LLC v. John Does 1-16 (Case no. 1:12-cv-00399)*
*Malibu Media, LLC v. John Does 1-30 (Case no. 1:12-cv-00402)*
*Malibu Media, LLC v. John Does 1-10 (Case no. 1:12-cv-00405)*
*Malibu Media, LLC v. John Does 1-27 (Case no. 1:12-cv-00406)*
*Malibu Media, LLC v. John Does 1-18 (Case no. 1:12-cv-00407)*
*Malibu Media, LLC v. John Does 1-15 (Case no. 1:12-cv-00408)*
*Malibu Media, LLC v. John Does 1-27 (Case no. 1:12-cv-00409)*

## District Of Columbia District Court – Jon A. Hoppe of Maddox Hoppe Hoofnagle & Hafey LLC

*Malibu Media LLC v. John Does 1-5 (Case no. 1:12-cv-00233)*
*Malibu Media LLC v. John Does 1-16 (Case no. 1:12-cv-00235)*
*Malibu Media LLC v. John Does 1-11 (Case no. 1:12-cv-00237)*
*Raw Films, Ltd. v. John Does 1-3 (Case no. 1:12-cv-00234)*
*Raw Films, Ltd. v. John Does 1-19 (Case no. 1:12-cv-00236)*

## Pennsylvania Eastern District Court – Christopher P. Fiore of Fiore & Barber LLC

*Malibu Media LLC v. John Does 1-15 (Case no. 2:12-cv-00664)*
*Malibu Media LLC v. John Does 1-17 (Case no. 2:12-cv-00665)*
*Malibu Media LLC v. John Does 1-10 (Case no. 2:12-cv-00666)*
*Malibu Media LLC v. John Does 1-11 (Case no. 2:12-cv-00667)*
*Malibu Media LLC v. John Does 1-22 (Case no. 2:12-cv-00668)*

On a personal note (*obviously not legal advice, as each plaintiff above handles cases differently, and each*

gals (*who often do not even sound sober and are probably sitting in a cubicle somewhere reading you a script*) <u>are not attorneys</u> and likely do not have authority to settle your case. If you have spoken to me, you know my opinion is that 1) they shouldn't even be calling you in the first place, and 2) you should not be discussing your case with them.

ADVERTISEMENT



alzheimer's ᘛᘚ association

Know the warning signs of Alzheimer's

Posted in <u>Computer Law</u>, <u>Federal Criminal Law</u>, <u>P2P</u>, <u>Peer-to-peer</u>, <u>Torrent</u> | Tagged <u>1:12-cv-00160</u>, <u>1:12-cv-00161</u>, <u>1:12-cv-00163</u>, <u>1:12-cv-00166</u>, <u>1:12-cv-00233</u>, <u>1:12-cv-00234</u>, <u>1:12-cv-00235</u>, <u>1:12-cv-00236</u>, <u>1:12-cv-00237</u>, <u>1:12-cv-00397</u>, <u>1:12-cv-00399</u>, <u>1:12-cv-00402</u>, <u>1:12-cv-00405</u>, <u>1:12-cv-00406</u>, <u>1:12-cv-00407</u>, <u>1:12-cv-00408</u>, <u>1:12-cv-00409</u>, <u>2:12-cv-00664</u>, <u>2:12-cv-00665</u>, <u>2:12-cv-00666</u>, <u>2:12-cv-00667</u>, <u>2:12-cv-00668</u>, <u>2:12-cv-01647</u>, <u>2:12-cv-01653</u>, <u>2:12-cv-01675</u>, <u>3:12-cv-00358</u>, <u>3:12-cv-00362</u>, <u>3:12-cv-00368</u>, <u>3:12-cv-00369</u>, <u>Adam Silverstein</u>, <u>Cavalluzzi & Cavalluzzi</u>, <u>Chris Fiore</u>, <u>Christopher Fiore</u>, <u>Christopher P. Fiore</u>, <u>Fiore & Barber</u>, <u>Jason Aaron Kotzker</u>, <u>Jason Kotzker</u>, <u>John Does</u>, <u>John Hoppe</u>, <u>Jon A. Hoppe</u>, <u>Jon Hoppe</u>, <u>Kotzker Law Group</u>, <u>Maddox Hoppe Hoofnagle & Hafey</u>, <u>Malibu Media LLC</u>, <u>O'Bryan Law Firm</u>, <u>Raw Films</u>, <u>Wayne O'Bryan</u> | 26 Comments

# 26 Responses

1. *on <u>March 7, 2012 at 2:04 am</u>* | <u>Reply</u>   *Anonymous*

   Interesting to see some action in the remaining districts of California. The same attorneys working Central CA filed a batch of cases about a year ago, but they were all very small (10 Does) and it was before things were brought to a head in CAND. It'll be interesting to see if there is less tolerance for this scam as a result of what has happened up North, and if the judges are now wise to the scam.

2. *on <u>March 7, 2012 at 9:44 pm</u>* | <u>Reply</u>   *<u>Christina Saunders</u>*

   After a short conversation with the notorious non-lawyer Elizabeth Jones in the "litigation department," at Malibu Media (same person sitting in Florida who handles settlements with Patrick Collins)–it's clear to me that Malibu Media is in-fact the same company as Patrick Collins

and Raw Films. It also makes sense as to why the same players keep showing up representing Plaintiffs on the docket. While unsubstantiated, I have my suspicions that operating as the new kids on the block-"Malibu Media"-is merely part of the smoke and mirrors being used to keep the District Courts from catching on to what these guys are really doing.

3. on <u>March 8, 2012 at 3:17 am</u> | <u>Reply</u>  *faz*

Does anyone know how long ISPs are saving log files these days, and any opinion on know time differences effects who the Trolls target? Also, I wonder if anyone has challenged the nature of data collection. Texas does require Private Investigators to be licensed, insured, etc..

○ on <u>March 8, 2012 at 1:40 pm</u> | <u>Reply</u>  *houstonlawy3r*

Generally, while each ISP's "IP retention policy" may differ, the general industry standard is that IP data is kept for SIX (6) MONTHS. After this time, the data is purged forever. However, if during this time a subpoena is issued as to a particular date/time stamp, that record is generally lifted and copied into a second database which is kept for a significantly longer time (I have heard numbers such as 10 years, and forever). So while the trolls have three years from the alleged infringement to file suit, they need to act fast or else the ISPs won't have the data to turn over to them. FYI, Congress is working now as we speak to extend this number significantly.

○ on <u>March 8, 2012 at 4:20 pm</u>  *Anonymous*

Two articles for your reference.

This article focuses primarily on cellular data. However, it's pretty safe to say that AT&T and Verizon's Internet businesses are similar to the wireless retention policies.

http://www.wired.com/threatlevel/2011/09/cellular-customer-data/

Here is a PDF from the DoJ, to be used as a guide for law enforcement and ISP retention policies.

http://www.wired.com/images_blogs/threatlevel/2011/09/retentionpolicy.pdf

This article is dated. But, it gives a glimpse of what "industry standards" definitions could be.

Like Mr. Cashman said, it varies, and varies a great deal. Six months is most likely considered on the low side.

4. on <u>March 9, 2012 at 10:38 am</u> | <u>Reply</u>  Bob Dobbs



Sign in with **f** **D** **Y!** **8** **in** **PCW** or Create a New Account.

PCWorld » Web

Recommend: **f** Like    **D** 12   💬 · 1   4    **f** 26    Email   7 Comments  Print

# Judge Throws out Mass John Doe Porn Copyright Lawsuits

By Grant Gross, IDG News  May 4, 2012 12:30 pm

A judge in New York has shot down the attempt of three pornography studios to sue nearly 80 people for allegedly downloading movies on BitTorrent, with the judge slamming the studio's efforts to file lawsuits against multiple anonymous defendants.

Magistrate Judge Gary Brown denied the studio requests to subpoena the names associated with 79 IP addresses, with Brown arguing that IP addresses aren't enough evidence to pinpoint who actually downloaded a file from BitTorrent.



"The assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time," Brown wrote in his ruling, first noted by the Fight Copyright Trolls blog. "An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones."

Brown, of U.S. District Court for the Eastern District of New York, allowed the lawsuits to move forward against only one defendant in each of four so-called John Doe lawsuits targeting anonymous Internet users.

Brown's 26-page order, issued Tuesday, could be a turning point in a massive effort to sue BitTorrent users for copyright infringement, said Mitch Stoltz, an attorney with the Electronic Frontier Foundation, a digital rights group that has opposed the John Doe lawsuits.

Subs
News

Enter

See All

Since mid-2010, movie studios and other content producers have sued more than 220,000 BitTorrent users for copyright infringement, Brown noted in his ruling, citing a U.S. News and World Report story.

Brown's ruling was broader than BitTorrent decisions from most other judges, and could be a model for future court decisions, Stoltz said. There's been a "huge split" among judges on whether to grant subpoena requests in these mass John Doe infringement lawsuits, although judges in California, Illinois and Washington, D.C., have taken similar stances to Brown's, he said.

"Many [judges] will see this as confirmation," Stoltz said of Brown's ruling. "There absolutely is a trend toward shutting down this sort of abuse of discovery."

## User's Identity Unproven

Brown took studios K-Beech, Malibu Media and Patrick Collins Inc. to task for their use of John Doe lawsuits seeking the identities of defendants by IP address. A number of people, including family members of the owner of the Internet account, visitors or free-riders on an open Wi-Fi network, could have access to an IP address and accomplished the alleged downloads, Brown wrote.

One defendant said he was at work during the time of the alleged download, Brown wrote. A second defendant said the plaintiffs targeted a closed account with an ISP. A third John, or Jane, Doe said she has "religious, moral, ethical and personal" objections to porn, but suggested the downloader may have accessed her unsecured Wi-Fi network.

The lawyer for a fourth John Doe said his client is "an octogenarian with neither the wherewithal nor the interest in using BitTorrent" to download porn, Brown wrote.

The judge's decision will make it difficult for the studios to fight "rampant" online piracy, said Jason Kotzker, the lawyer for Malibu Media and Patrick Collins.

"If copyright holders are to be able to take any steps to fight piracy, they must start with evidence relating to an IP address," Kotzker wrote in an e-mail. "The only way to know who was controlling the IP address at the time of infringement is by the court granting initial discovery."

Many of the infringement cases are settled, with the infringers taking responsibility for their actions, Kotzker added.

But tens of thousands of BitTorrent users infringe his clients' copyrights every month, he added. Without a way to identify them, "intellectual property has no value," he said. "A right is no longer a right if it cannot be enforced. Should my clients just surrender and give up?"

## Lawsuit Continues

K-Beech disagrees with the judge's decision, said Frederic Abramson, a lawyer for the studio. K-Beech will move forward with its lawsuit against John Doe No. 1, he said.



Brown, in his ruling, also suggested the porn studios may be shaking down defendants for settlements by preying on the defendants' fear that their names would be publicly connected with pornography.

One defendant offered a negotiator for studio K-Beech "unfettered access" to his computer in an effort to prove he did not download the

movies, Brown wrote. K-Beech instead pushed for a settlement or for the lawsuit to move forward, Brown wrote.

"This suggests an approach that is highly inappropriate," Brown said.

The EFF's Stoltz agreed, saying the mass BitTorrent lawsuits attempt to force the owner of the IP address to "either pay up or finger someone else."

"This is a business model that depends on them getting relatively small settlements in the several-thousand-dollar range from a large number of people," Stoltz said. "If they're not getting large numbers -- if they have to go through a full court process with any appreciable fraction of the people they're targeting -- they're not making any money."

*Grant Gross covers technology and telecom policy in the U.S. government for The IDG News Service. Follow Grant on Twitter at GrantGross. Grant's e-mail address is grant_gross@idg.com.*

See more like this:copyright,web legal issues

Would you recommend this story?  YES 21  NO 0

Recommend:   Like       12   -1   4       26    , Email   7 Comments  Print

## Comments (7)

*


Submit Comment

Once you click submit you will be asked to sign in or register an account if you are not already a member

Sort by: **Oldest First**    Newest First



By **Fatesrider**

Fri May 04 12:04:12 PDT 2012

Correct me if I'm wrong, but isn't this tactic of suing the "location" of the IP address EXACTLY what the RIAA did?

**Bes**

Mos

See

See
on T
on P

## Today'

"See It To B
AOC's 20" LI
-ultra-thin fra

**#1 Must-H**
16" USB pov
dual monitor

**LogMeIn F**
PC or Mob

Apparently the porn industry hasn't paid enough graft into the justice system to get the same preferential treatment to hose the rights of the citizens of the country like the RIAA has done.

Recommend    1                                                                 Report Abuse    Reply



**By mike6875**

Fri May 04 12:08:05 PDT 2012

Way to go Judge Brown,it's about time somebody told these clowns were to stick it.(no pun intended)

Recommend    1                                                                 Report Abuse    Reply

**By mike6875**

Fri May 04 12:13:26 PDT 2012

Fatesrider said

*Correct me if I'm wrong, but isn't this tactic of suing the "location" of the IP address EXACTLY what the RIAA did?*

*Apparently the porn industry hasn't paid enough graft into the justice system to get the same preferential treatment to hose the rights of the citizens of the country like the RIAA has done.*

Maybe the Judges are starting to see thru these scumbags.

Recommend                                                                     Report Abuse    Reply

**By HighSierra**

Fri May 04 12:45:09 PDT 2012

ha, ha, ha, ha thud.

Recommend                                                                     Report Abuse    Reply

**By TheTess**

Fri May 04 13:04:07 PDT 2012

Yep, good to see the judges are starting to understand that 1 IP address does not stand for 1 PC or person. Tou know how many people use my main PC in my livingroom? omg! From family to friends. OR when the MPAA was caught downloading full seasons of "Dexter", they

Deliver remo
diagnose, ar
costs and im

**Do you ha**
Send in a sn
could win. A
their next AP

**Dice - The**
Search over

**My Passp
users**
Tons of stora
encryption. I

**Do you t**
Send in a s
could win.
their next A

**See It To**
AOC's 20"
-ultra-thin f

**ThinkPa
Producti**
Shop now

**Technol**
Technolog

**Lenovo I**
Click here
desktops,

**LogMeln
PC or M**
Deliver rer
diagnose,
costs and

**Affordat**
Get the be
and save

**Synolog**
DiskStatic
and share

**Viewers
Reason**
From its t
glasses, l

**Techno**
Technolo

**Canon l**
Unique u
now, get

**#1 Mus**
16" USB
dual mor

Attachment 5

# Federal Computer Crimes

# TorrentLawyer™, a Cashman Law Firm, PLLC Blog – Where Computer Law & Criminal Law Meet

**Feeds:**

Posts

Comments

# MISSION ACCOMPLISHED? New York's Split Southern District Court

May 17, 2012 by houstonlawy3r

It is very easy to put up a banner claiming "MISSION ACCOMPLISHED — NO MORE BITTORRENT CASES IN SOUTHERN DISTRICT OF NEW YORK," but reality is not that simple. A judge can give a ruling, and it can be a darned good ruling which is binding on all other judges in that federal district (similarly, that ruling is persuasive for judges in other federal districts). One such case is the case written up by Sophisticated Jane Doe in her "The Domino Effect: Trolls are not welcome in the Southern District of New York anymore (http://fightcopyrighttrolls.com/2012/05/16/the-domino-effect-trolls-are-not-welcome-in-the-southern-district-of-new-york-anymore/)" article posted just moments ago. I do not need to re-write this up — she did a wonderful job, and there is no reason to duplicate her efforts.

That being said, this case does merit some discussion. The name of the case is *Digital Sins, Inc., v. John Does 1-245* (Case No. 1:11-cv-08170, or 11 Civ. 8170) [misspelled], filed in the U.S. District Cour for the SOUTHERN DISTRICT of New York (remember our blog post about forum shopping (http://torrentlawyer.wordpress.com/2012/05/17/forum-shopping-by-copyright-trolls/) there?). I am happy to share that the case is now SEVERED AND DISMISSED. Obviously, congratulations to the Cashman Law Firm, PLLC clients who were part of that case. This ruling is WONDERFUL for you.

As far as I am concerned, this ruling was the order I was waiting for back in March when I reported

that all of copyright troll Mike Meier's New York cases were consolidated by Judge Forrest (http://torrentlawyer.wordpress.com/2012/03/12/update-more-of-mike-meier-bittorrent-cases-soon-to-go-bust/). Similarly, you'll see what I thought would happen in my "New York Judge consolidates and freezes SMALLER BITTORRENT CASES for plaintiff attorney (http://torrentlawyer.wordpress.com/2012/03/05/mike-meier-bittorrent-cases-frozen/)" article earlier that month. Well in short, my opinion with hindsight was that all this was a dud, and Judge Forrest merely consolidated the cases to rein in Mike Meier so that she can control him and his cases so that they all had uniform outcomes. This was obviously a step in the right direction, but it did not dispose of the cases in their entirety. Perhaps because Judge Forrest had experience with copyright cases in the past, she thought she should be the one to preside over them. However, in my opinion, she just made them more orderly; she didn't rule on the underlying issues plaguing each of Mike Meier's cases.

Here comes Judge Colleen McMahon of the same Southern District as Judge Forrest, and she (like Judge Forrest) has my respect. In her ruling on Tuesday, she took the opportunity to take a John Doe ruling, and turn it into NEW LAW FOR NEW YORK COURTS (obviously I am referring to the federal courts). What impressed me was that not only was she aware of Judge Forrest's activities, she changed the law by dissenting with them.

*"Judges Forrest and Nathan, have decided to allow these actions to go forward on a theory that permissive joinder was proper. I most respectfully disagree with their conclusion." (p.4)*

Further, she ruled that if Mike Meier wanted to sue these 244 defendants, he may do so in separate lawsuits, AND HE MUST PAY THE $350 FILING FEE FOR EACH LAWSUIT (that's $85,400 in filing fees that Digital Sin, Inc. will have to pay if they want to go after the dismissed defendants).

*"They are dismissed because the plaintiff has not paid the filing fee that is statutorily required to bring these 244 separate lawsuits." (p.4)*

What made this case blogworthy *(and you'll notice, I rarely post about the run-of-the-mill dismissals that happen every day in various jurisdictions when their rulings teach nothing new)* was that Judge McMahon suggested TWO STRATEGIES to John Doe Defendants that she believes would successfully refute the plaintiff attorney's geolocation evidence as proof that the court has personal jurisdiction over the accused IP addresses.

Firstly, she suggests that the John Doe defendants not living in the jurisdictional confines of the court simply file a SWORN DECLARATION that they live somewhere else.

*"John Doe 148 could have overcome [the geolocation data evidence provided by the plaintiff] by averring [e.g., in a sworn decaration] that he was a citizen and resident of some state other than New York — even New Jersey or Connecticut, portions of which are located within the geographic area that is covered by the geolocation data." (emphasis added, p.5)*

Secondly, she said that since plaintiff attorneys are getting the personal jurisdiction right (e.g., filing lawsuits against Californians in California, against Texans in Texas, etc.), defendants could start asserting the "WRONG VENUE" argument (essentially saying, "Court, yes, I live in New York. But I was sued in Long Island and I live in Buffalo. It would be an extreme hardship for me to travel

down to Long Island every time I need to show up for a hearing there to defend my case."). The actual verbiage suggested by the Court is that *"...plaintiff has failed to plead facts rom which a reasonable trier of fact could conclude that this Court has personal jurisdiction over this John Doe, or that venue is properly laid in this district."* (emphasis added).

Next, this ruling is VERY EXCITING because it puts handcuffs on Mike Meier should he wish to file against any of the severed and dismissed defendants in a follow-up case. Those rules are:

1) When an ISP complies with a subpoena request, **it may not share the telephone number or e-mail address of the subscriber with the plaintiff attorney.**

2) Assuming the ISP does not file a motion to quash (it obviously may AND SHOULD do so on behalf of its subscribers [my opinion]), **the ISP shall share the subscriber's information WITH THE COURT ONLY (not directly to the plaintiff as is usually done), and the court will disclose the information to the plaintiff attorney**. (I'm not sure the benefit of this — they still get the contact information of the John Doe Defendants this way).

3) The plaintiff may use the information disclosed ONLY FOR THE PURPOSE OF LITIGATING THAT CASE (so the plaintiff may no longer use the threat of future litigation if they do not immediately settle to extort a settlement. This was a tactic used by many plaintiff attorneys (most notoriously, Prenda Law Inc. who admitted that they dismissed the case so that they can go after the John Doe Defendants [extorting settlements] without the court's involvement).

Lastly — and her timing is quite interesting as we just finished writing about <u>forum shopping in bittorrent cases (http://torrentlawyer.wordpress.com/2012/05/16/forum-shopping-is-the-link-between-the-tx-dc-millennium-tga-inc-lawsuits/)</u> — she warned Mike Meier not to engage in "judge shopping."

> *"Lest plaintiff's counsel think he can simply put cases against the severed and dismissed John Doe defendants into the wheel for assignment to yet another judge, I remind him of Local Civil Rule 1.6(a) [which requires the plaintiff attorney to bring the existence of potentially related cases to the attention of the Court]."*

For your reading pleasure, I have pasted a copy of the order below. For my own opinion on the topics discussed by the judge, I have pasted them below the judge's order.



Case 1:11-cv-08170-CM  Document 18  File...

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————x

DIGITAL SINS, INC.,

- Share
- Embed

1
of 9

View this document on Scribd (http://www.scribd.com/doc/93798958)

*MY OPINION: There is more here that I did not write about, namely that the judge believes that all th*
***bittorrent cases currently being held by Judge Forrest and Judge Nathan should be assigned ove***
***to her*** *so that she can dispose of them once and for all. She also went into other judge's rulings which*
*duplicate content in other articles on the blog. However, once again, we have another wonderful ruling.*
*However, moving forward, perhaps I am a bit jaded, but I don't foresee Judge Forrest or Judge Nathan*
*tomorrow assigning over all their bittorrent cases to this judge. There is now a disagreement in the New*
*York courts (as there are in many jurisdictions) as to how to handle these cases. I would love to jump up*
*and down, wave a banner and declare "MISSION ACCOMPLISHED — NO MORE BITTORRENT*
*CASES IN SOUTHERN DISTRICT OF NEW YORK," but quite frankly this is not reality.*

*More likely than not, plaintiff attorneys such as Mike Meier, Jason Kotzker, and any other copyright*
*troll who wants to file in New York will continue to file there. As you can see in my [forum shopping](http://torrentlawyer.wordpress.com/2012/05/17/forum-shopping-by-copyright-trolls/)*
*[article (http://torrentlawyer.wordpress.com/2012/05/17/forum-shopping-by-copyright-trolls/)](http://torrentlawyer.wordpress.com/2012/05/17/forum-shopping-by-copyright-trolls/) (which*
*should more properly be called "Judge Shopping"), an attorney can in ONE DAY file **9 SEPARATE***
***CASES and receive 7 SEPARATE JUDGES**, as was the case with Kotzker's recent filings.*

In addition, while the SWORN DECLARATION argument and the VENUE arguments are both
easy solutions to disprove the plaintiff's prima facia case for personal jurisdiction (meaning, the bare
minimum a court will require in order to accept the fact that it has personal jurisdiction over the
defendants in the case), a John Doe Defendant hoping to hide his identity from the plaintiff attorney

and quash a subpoena should not be excited by these solutions. 1) For the sworn declaration, they' necessarily be giving up their true location (they cannot lie that they live in Connecticut when they live in California), and we all know that Mike Meier is only ONE local attorney to a larger IP monetization group ("The Copyright Enforcement Group") which has other attorneys in other states, and who continues to recruit new hungry would-be copyright trolls. So even if they succeed in getting their case dismissed here, guess who will be filing against them in their home state's feder court? 2) A John Doe Defendant who asserts the "correct state, wrong venue" argue just made a bi; blunder — he admitted that personal jurisdiction is proper in that state. Rules for venue are based c a number of factors, NOT ONLY WHERE THE DEFENDANT LIVES. Similarly, no doubt the plaintiff will respond in a wrongful venue argument in a motion to quash that "John Doe filed this motion to quash asserting wrongful venue (which by the way is not a valid ground to quash a subpoena; jurisdiction IS), but he is not a party to the action [yet] and thus he has no standing to file this motion to quash." Remember this? Lastly and realistically, the proper time a defendant CAN AND SHOULD use this wrongful venue argument is in his ANSWER (which means he was already NAMED as a defendant in the case). Too late. There are better issues to kill a case at this point than complaining that the court is too much of a drive.

[DISCLAIMER: I've given many opinions here which is not to be taken as legal advice. Each defendant has different needs and different circumstances, and for this reason, the legal advice I give for one of my clients may not be appropriate (or may even be harmful) to another client who's circumstances are different. Also, obviously no attorney-client relationship is formed until you sign a retainer and become a client.]

ADVERTISEMENT

Posted in Computer Law, Federal Criminal Law, P2P, Peer-to-peer, Torrent | Tagged 11 Civ. 8170, 1:11-cv-08170, Bittorrent Lawsuit, CEG, Comcast, Copyright Enforcement Group, copyright troll, Digital Sin, Digital Sin Inc., Digital Sins, filing fee, FRCP, improper jurisdiction, ISP, Jason Kotzker, John Doe, Judge Forrest, Judge McMahon, Judge Nathan, Mike Meier, NYSD, personal jurisdiction, Sophisticated Jane Doe, Southern District of New York, venue, wrong venue | 4 Comments

# 4 Responses

1. on _May 17, 2012 at 10:55 pm_ | _Reply_     _The Domino Effect: Trolls are not welcome in the Southern District of New York anymore « Fight Copyright Trolls_
   [...] on The Domino Effect: Trolls are not welcome in the Southern District of New York anymoreMISSION ACCOMPLISHED? New York's Split Southern District Court « Federal Computer Crimes on The Domino Effect: Trolls are not welcome in the Southern District of New [...]

2. on _May 17, 2012 at 11:11 pm_ | _Reply_     _sophisticatedjanedoe_
   Thanks, Rob. Very insightful. On a slightly unrelated note... well I hope it is related: Katherine Forrest is the very same judge who delivered an _amazing ruling_ yesterday. I presume she was really busy with that lawsuit, and it takes a lot of courage to do what she did.

   o on _May 18, 2012 at 12:07 am_ | _Reply_     _houstonlawy3r_
     Now THAT is a good use of her time. Babysitting the porn companies while they abuse the system is probably not the best use of her time. I wonder how she feels about these cases.

3. on _May 18, 2012 at 12:07 am_ | _Reply_     _Anonymous_
   Nice to have your commentary back Rob, although you're right it's pretty much been a consistent run of empty threats from Trolls and dismissals from suspicious judges for the last couple months.

   Even though he's not my Troll I particularly enjoy reading about Mike Meier's trials and tribulations. That scumbag went from being an (apparently phony) BitTorrent defense attorney to joining up with CEG right when things started turning consistently against the Trolls. If he had stuck with Plan A his business would probably be growing, but instead he is perhaps the consistently least successful Troll I can think of and is helping to provoke some of the most useful decisions against their business model.

_Comments RSS_

_Blog at WordPress.com._

Court Report ny
from South District,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDN
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE: 5/15/12

------------------------------------------------x

DIGITAL SINS, INC.,

Plaintiff,

-against-                                         11 Civ. 8170 (CM)

JOHN DOES 1-245,

Defendants.

------------------------------------------------x

## MEMORANDUM DECISION AND ORDER SEVERING JOHN DOES 2-245 FROM JOHN DOE 1 AND DISMISSING THE CASES AGAINST JOHN DOES 2-245 PENDING THE PAYMENT OF THE REQUISITE FILING FEE; AND SETTING FORTH RULES FOR THE CONDUCT OF FURTHER LITIGATION BY THIS PLAINTIFF AND PLAINTIFF'S LAW FIRM IN CONNECTION WITH THE ALLEGED INFRINGEMENT OF "MY LITTLE PANTIES 2"BY THESE JOHN DOE DEFENDANTS

McMahon, J.:

Presently before the Court is a motion by John Doe 148 for dismissal or severance of his case from this matter, as well as a motion to quash a subpoena served on various internet service providers seeking information about, *inter alia*, John Doe 148, and for a protective order. (ECF No. 11.) John Doe 149, another putative defendant in this case, has filed a similar motion. (ECF No. 15.) The present motion addresses these items.

Because these 245 separate cases do not meet the requirements for permissive joinder under Fed. R. Civ. P. 20(a)(2) — and because the Court has seen fit to exercise her discretion under Fed. R. Civ. P. 20(b), 21, and 42(b) — John Doe 148's and 149's motions to sever the claims against them is granted. For the reasons discussed below, the case is also dismissed, *sua sponte*, as against John Does 2-245 without prejudice to plaintiff's bringing those claims in separate lawsuits against each John Doe defendant, upon payment of the appropriate filing fee. I am also explaining the procedures plaintiff must follow in order to reinstitute actions against the severed defendants. And I set June 1, 2012 as the absolute deadline for plaintiff to file proof of service on John Doe 1.[1] If plaintiff fails to file proof of service by that date, this action will be dismissed against John Doe 1 as well.

---

[1]     Plaintiff's "Application Pursuant to Rule 4(m) for Enlargement of Time to Serve Defendants as Well as Status Report" (ECF No. 17) is denied.

1

## BACKGROUND

Plaintiff alleges that each of 245 different John Doe defendants has uploaded and downloaded a pornographic film entitled "My Little Panties 2," the rights to which are controlled by plaintiff. What the John Does allegedly have in common, aside from their presumed interest in hardcore pornography,[2] is that they all allegedly used a peer-to peer client sharing protocol known as BitTorrent to obtain the film as part of something called a "swarm." My colleague in the Eastern District of Virginia, The Hon. John A. Gibney, Jr., described this as follows:

> The BitTorrent software at issue allows a person to visit a private website and download a file containing the desired digital media onto a program that is already installed on the user's computer. Once the file is loaded, the BitTorrent program connects to hundreds or thousands of different users that possess and share copies of the particular media contained in the file. BitTorrent coordinates the copying of the media using the digital copies of those other users. As the original user (or "peer") downloads his or her copy, it immediately becomes available to other users who may be looking to obtain the file. The collection of users who simultaneously "share" a particular file is known as a "swarm."

*K-Beech, Inc. v. John Does 1-85*, No. 3:11cv468, 2011 U.S. Dist. LEXIS 124581, at *2-3 (E.D.V.A. Oct. 5, 2011).

The plaintiff alleges that all of the defendants, as part of a single "swarm," are properly joined together in a single action under Fed. R. Civ. P. 20(a)(2), which permits — but does not require — joinder when a plaintiff's right to relief "is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the *same transaction, occurrence, or series of occurrences.*" (Emphasis added).

## DISCUSSION

### I.   Joinder is Improper in This Action

There is no need for this Court to write another lengthy opinion discussing why plaintiff's theory is wrong. Rather, I adopt and expressly incorporate into this memorandum order the reasoning of Judge Gibney in *K-Beech*; Magistrate Judge Spero of the Northern District of California in *Hard Drive Productions, Inc. v. Does 1-188*, No. C-11-01566, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011); several other courts in the Northern District of California, including *Diabolic Video Productions, Inc. v. Does 1-2099*, 10 Civ. 5865, 2011 U.S. Dist. LEXIS 58351, at *10-11 (N.D. Cal. May 31, 2011); and most especially the comprehensive Report and Recommendation of The Hon. Gary R. Brown, U.S.M.J., that was filed just last week in our sister court, the Eastern District of New York, in *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11-cv-3995, 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012).

---

[2]     As John Doe 148 absolutely denies ever having downloaded the movie, it is highly questionable whether the John Does have that in common, either.

All of the courts on which this Court relies, and whose reasoning I find persuasive, have concluded that where, as here, the plaintiff does no more than assert that the defendants "merely commit[ed] the same type of violation in the same way," it does not satisfy the test for permissive joinder in a single lawsuit pursuant to Rule 20. In this Circuit, the fact that a large number of people use the same method to violate the law does not authorize them to be joined as defendants in a single lawsuit. *See Nassau Cnty. Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty*, 497 F. 2d 1151, 1154 (2d Cir. 1974). For the reasons set forth by Magistrate Judge Brown, there is no basis from the allegations of the complaint to conclude that any of the defendants was acting other than independently when he/she chose to access the BitTorrent protocol. "The bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they [sic] were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods.*, 809 F. Supp. 2d at 1163. Nothing in the complaint negates the inference that the downloads by the various defendants were discrete and separate acts that took place at different times; indeed, the complaint alleges that separate defendants shared access to a file containing a pornographic film in separate and isolated incidents over the course of 59 days. In other words, what we have here is 245 separate and discrete transactions in which 245 individuals used the same method to access a file via the Internet — no concerted action whatever, and no series of related occurrences — at least, not related in any way except the method that was allegedly used to violate the law.

Because joinder was impermissible in this action, I grant the motions of John Does 148 and 149 to sever their claims from those of the other defendants.

Furthermore, like many of the other judges who have confronted this situation, I exercise my discretion under Fed. R. Civ. P. 20(b), 21, and 42(b) to sever plaintiff's claims against all defendants except John Doe 1. *See, e.g., Hard Drive Productions*, 809 F. Supp. 2d at 1164-65; *In re Bittorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447, at *34-37.

There are no litigation economies to be gained from trying what are in essence 245 different cases together, because each of the John Does is likely to have some individual defense to assert. Each defendant's situation, which is unique to him or her, will have to be proved separately and independently. As my colleague Judge Newcomer of the Eastern District of Pennsylvania held when assessing a similar strategy arising out of illegally downloaded music files in *BMG Music v. Does 1-203*, Civ. A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004):

> []Subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

3

I already have two motions from two John Doe defendants. One of those defendants has raised the issue of *in personam* jurisdiction, which will be discussed more fully below, and which presents issues unique to him (and different from any other individual defendant who might also assert that the Court lacks jurisdiction over his person). I can expect the various defendants to raise issues relating to the sharing of computers, accessing IP addresses through unsecured wireless networks, personal predilections, and even the location of defendants at the time they are alleged to have accessed the file containing plaintiff's movie. Trying 245 separate cases in which each of 245 different defendants would assert his own separate defenses under a single umbrella is unmanageable. Indeed, it is no accident that plaintiff has not sought to bring this lawsuit as a class action, or to have a class of defendants certified —the Rule 23 requirements for certification could not possibly be met. *See, e.g., Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011).

The only economy that litigating these cases as a single action would achieve is an economy to plaintiff — the economy of not having to pay a separate filing fee for each action brought. However, the desire to avoid paying statutorily mandated filing fees affords no basis for joinder. In these BitTorrent cases, where numerous courts have already chronicled abusive litigation practices — again, I refer to the reader to Magistrate Judge Brown's Report and Recommendation — forcing plaintiff to bring separate actions against separate infringers, and to pay a filing fee for each action, is the single best way to forestall further abuse. This is particularly important because the nature of the alleged copyright infringement — the downloading of an admittedly pornographic movie — has the potential for forcing coercive settlements, due to the potential for embarrassing the defendants, who face the possibility that plaintiff's thus-far-unsubstantiated and perhaps erroneous allegation will be made public.

Indeed, litigation abuse has been a hallmark of the litigation in this court over the purported downloading of My Little Panties Two. There are presently three separate My Little Panties swarm cases pending before three different judges of this court — presumably on the theory that each lawsuit sues only defendants who were involved in a particular, identifiable swarm. The lawsuits could have been filed as related cases under Rule 13(c)(i) of the Local Rules for the Division of Business among District Judges of the Southern District of New York,[3] but were not. This leads to the untenable result that the three different judges have reached different conclusions about the propriety of joining multiple members of the same swarm in a single case; my esteemed colleagues, Judges Forrest and Nathan, have decided to allow these actions to go forward on a theory that permissive joinder was proper. I most respectfully disagree with their conclusion.

The actions against the severed defendants are hereby dismissed without prejudice. They are dismissed because plaintiff has not paid the filing fee that is statutorily required to bring these 244 separate lawsuits. The plaintiff may restore its action against any one, or all, of the 244 severed defendants by filing an individualized complaint against that defendant in conformity with the rules set down below (see page 7-8, *infra.*) and by paying the requisite filing fee.

---

[3]      *See also* Local Civil Rule 1.6(a).

## II.   *In Personam* Jurisdiction

John Doe 148 moved in the alternative to dismiss the claims against him on the ground
that the Court lacks jurisdiction over his person. While mooted by my decision to sever and
dismiss John Doe 148 from this action, the motion brought to the Court's attention that plaintiff
has not made a *prima facie* showing that this Court has jurisdiction over the person of the
defendants.

In moving to dismiss on for lack of personal jurisdiction, John Doe 148 did not file an
affidavit identifying himself or the place in which he lives (although his attorney, who is from
Georgia, does imply that John Doe 148 lives "across the country" from New York). Instead, he
relies on the fact that plaintiff must establish that the Court has personal jurisdiction over him
and the other defendants, arguing that the mere fact that he may have been part of the same
"swarm" is insufficient to demonstrate in personam jurisdiction over any particular member of
the "swarm."

To its opposition to John Doe 148's motion, plaintiff attached three IP locator reports,
each indicating that John Doe 148 is located in New York, New York. (Opp'n to John Doe 148's
Mot. To Dismiss or Sever the Matter, Quash, and for a Protective Order ("Opp'n") at 4, Exs. 1-3
(ECF No. 13).) While such publicly available IP locators are not 100% accurate, they have been
accepted as making out a *prima facie* case of personal jurisdiction. *See, e.g., John Wiley & Sons,
Inc. v. Does Nos. 1-27*, No. 11 CIV. 7627 WHP, 2012 WL 364048, at *1 (S.D.N.Y. Feb. 3,
2012); *Digital Sin, Inc. v. Does 1-176*, --- F.R.D. ----, 2012 WL 263491, at *1 (S.D.N.Y. 2012)
("Publicly available 'reverse IP' checks confirmed that all of these addresses very likely belong to
individuals located in New York."); *DigiProtect USA Corp. v. Does*, No. 10 CIV. 8760 PAC,
2011 WL 4444666, at *3-4 (S.D.N.Y. Sept. 26, 2011) ("A showing that the internet account
associated with an IP address that allegedly engaged in infringing activity is located in New
York State is sufficient to establish *prima facie* personal jurisdiction over the alleged infringer.");
*Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40-41 (D.D.C. 2011). John Doe 148 could
have overcome that showing by averring that he was a citizen and resident of some state other
than New York — even New Jersey or Connecticut, portions of which are located within the
geographic area that is covered by the geolocation data. As noted, he did not elect to do so. I
cannot, therefore, grant his motion to dismiss on the ground that personal jurisdiction is lacking,
although I deny it without prejudice. Should he be sued again, John Doe 148 will have to make a
showing about where he actually resides in order to defeat plaintiff's *prima facie* pre-discovery
showing of personal jurisdiction based on the geolocation data.

However, plaintiff did not plead any facts tending to show that any of the other
defendants is amenable to jurisdiction in New York. The geolocation data submitted by plaintiff
in opposition to John Doe 148's motion only raises a *prima facie* case for jurisdiction over that
single individual. This raises the question of whether I should *sua sponte* dismiss the complaint
against John Doe 1, on the ground that plaintiff has failed to plead facts from which a reasonable
trier of fact could conclude that this Court has personal jurisdiction over him, or that venue is
properly laid in this district.

Jurisdiction over the person of John Doe 1 is certainly open to question. The fact that different defendants are part of the same "swarm" has been rejected by several courts as a basis for asserting personal jurisdiction over them in a particular court — including in this courthouse, where my colleague, The Hon. Thomas P. Griesa, dismissed an action as against out-of-state defendants in a file-sharing case. *Digiprotect USA Corp. v. Does 1-266*, 10 CIV. 8759 TPG, 2011 WL 1466073 (S.D.N.Y. Apr. 13, 2011); *see also DigiProtect*, 2011 WL 4444666.

Plaintiff insists that it has demonstrated *in personam* jurisdiction, and solved the problem identified by Judge Griesa in *Digiprotect*, by bringing this action only against John Doe defendants whose IP addresses can be traced to the area in and around New York City. Indeed, plaintiff's counsel specifically asserts that he "undertook efforts to ensure that all listed John Does are New York residents, as explained in . . . the technology declaration of Jon Nicolini." (Opp'n at 1.) But the "technology declaration" filed by Mr. Nicolini to support this assertion does not establish that any John Doe defendant is subject to the jurisdiction of this Court. Neither does Mr. Nicolini's carefully worded declaration establish that a case against any particular John Doe who is amenable to jurisdiction in this state (either generally or transactionally) could be properly venued in the Southern District of New York (as opposed to, say, the Eastern District of New York). Mr. Nicolini is careful to say, "We could determine that the Doe Defendants in this case *are likely within or near the geographic location of the court.*" (Nicolini Decl. ¶ 23 (emphasis added).)

Plaintiff's attorney is located in Fairfax, Virginia, which is part of a multi-state metropolitan area encompassing three separate jurisdictions — Virginia, Maryland, and the District of Columbia — so he should know that there are places in the United States where locations "within or near the geographic location" of a courthouse are not necessarily in the same district, or even the same state, as that courthouse. New York City is just such a place. It, like the Washington DC area where plaintiff's attorney works, is a multi-state and multi-district metropolitan area. And indeed, the area that qualifies as "within or near the geographic location of the Court," (Compl. ¶ 4), includes portions of the States of New Jersey and Connecticut — as well as areas of New York that are located in Brooklyn, Queens and on Long Island, all of which lie in the Eastern District of New York. The former fact gives rise to concerns about personal jurisdiction; the latter, to venue questions.

Plaintiff did not bother to attach IP locator reports — or even assert that he ran IP locator reports — for all defendants, even though doing so appears to be quite easy. (*See* Compl. at 13 ("I checked the locations through the IP locators at http://www.ip-address.org and/or http://www.arin.net and/or http://www.ipligence.com.").) To the contrary, Plaintiff's counsel avers that he only "personally conducted *a random batch test* of the purported locations of the IP addresses" of the John Does. (*Id.* (emphasis added).) Plaintiff's counsel was not so hasty in a subsequently filed action in this court arising out of the same copyright and video at issue in this case. *See* Compl. at 13, *Digital Sin, Inc. v. Does 1-176*, No. 12-cv-126-AJN (S.D.N.Y. Jan. 6, 2012) (ECF No. 1) (Nathan, J.) ("I checked the locations through the IP locators at http://www.ip-address.org and/or http://www.arin.net and/or http://www.ipligence.com. *During my search, I did not find any IP addresses that were outside the geographic area of the Court.*") (emphasis added); *see id.* Ex. D (declaring that all defendants are believed to be residents of New York). This oversight is troubling.

But while plaintiff has not pleaded facts tending to show that this Court has personal jurisdiction over remaining defendant John Doe 1 — or that venue over him lies in the Southern District of New York — both personal jurisdiction and venue are waivable defenses. I cannot presume that John Doe 1 will choose to assert either or both of them. Therefore, I cannot dismiss the complaint *sua sponte* against John Doe 1 on jurisdictional or venue grounds at this time.

However, should plaintiff successfully serve John Doe 1 by the date set by this Court for accomplishing service, I will entertain a motion to dismiss on either or both grounds from John Doe 1, should he have grounds to assert them. And if plaintiff decides to sue these John Doe defendants again in the Southern District of New York, he would be well advised to obviate a motion to dismiss under Rules 12(b)(2) and (b)(3) by including in his pleading some indication that jurisdiction attached to the particular John Doe being sued and that venue is properly laid in this district.

## III.  Going Forward

Because I have severed and dismissed the claims against the defendants, I hereby *sua sponte* quash any subpoena that may be outstanding to any internet service provider seeking information about the identity of any John Doe defendant other than John Doe 1. Plaintiff is directed to send a copy of this order within 24 hours of its issuance to any and every internet service provider who has been served with a subpoena for any information concerning any other John Doe defendant.

Should plaintiff choose to re-file actions against any of the severed defendants (which actions must be referred to this Court under the rules of this court as related to a prior pending action seeking the same relief against the same party, *see* Rule 4(b) of the Local Rules for the Division of Business among District Judges of the Southern District of New York), any effort to take discovery prior to service must follow the sensible protocol adopted by Magistrate Judge Brown in *In re BitTorrent Adult Film Copyright Infringement Cases:*

(1)    Subpoenas may not issue seeking the telephone numbers or email addresses of the individuals who are assigned a particular IP address. Within seven days of service of each subpoena, the ISP shall reasonably attempt to identify the John Doe sued, and provide that John Doe (not plaintiff) with a copy of the subpoena and a copy of this order (which plaintiff must attach to the subpoena). If an ISP is unable to determine, to a reasonable degree of technical certainty, the identity of the user of a particular IP address, it shall notify plaintiff's counsel in writing, so that a record can be kept for review by the Court.

(2)    An ISP may move to quash or otherwise object to any subpoena within 21 days. Similarly, each potential defendant shall have 21 days from receipt of the subpoena from the ISP to move to quash or otherwise object to the subpoena.

(3)    Absent motions to quash, the ISPs shall produce the information sought to the court, not to plaintiff, within 21 days after notifying each defendant as aforesaid. Such submission shall be ex parte and under seal. The information will be disclosed to plaintiff's

7

counsel by the Court. No such disclosure shall include any email addresses or telephone numbers.

(4) Plaintiff may use the information disclosed, once it is received by plaintiff's counsel, only for the purpose of litigating the instant case.

Lest plaintiff's counsel think he can simply put cases against the severed and dismissed John Doe defendants into the wheel for assignment to yet another judge, I remind him that Local Civil Rule 1.6(a).[4] This rule imposes an ongoing duty on attorneys to bring the existence of potentially related cases to the attention of the Court, "in order to avoid unnecessary duplication of judicial effort." *Id.* As I have already discussed, Plaintiff's counsel has filed three cases in this district, pending in front of Judge Forrest, Judge Nathan, and myself, all concerning the *exact same movie* — "My Little Panties 2" — *with the exact same copyright* –– PA0001733587 / 2011-02-10. *Compare* Compl. ¶ 8, *Digital Sin, Inc. v. Does 1-245,* No. 11-cv-8170-CM (S.D.N.Y. Nov. 10, 2011) (ECF No. 1) (McMahon, J.), *with* Compl. ¶ 8, *Digital Sin, Inc. v. Does 1-179,* No. 11-cv-8172-KBF (S.D.N.Y. Nov. 10, 2011) (ECF No. 1) (Forrest, J.), *with* Compl. ¶ 8, *Digital Sin, Inc. v. Does 1-176,* No. 12-cv-126-AJN (S.D.N.Y. Jan. 6, 2012) (ECF No. 1) (Nathan, J.). The complaints also allege the same causes of action (copyright infringement and contributory infringement). All these cases should have come to me. Instead, they are scattered all over the courthouse, where they have yielded inconsistent procedural rulings.

This is exactly the situation –– three judges ruling separately on cases that should have been consolidated –– for which the rule was promulgated. Plaintiff's counsel is cautioned that he must comply with Local Civil Rule 1.6(a) and Rule 4(b) of the Local Rules for the Division of Business among District Judges of the Southern District of New York, if and when he refiles separate actions against any of the individual John Doe defendants whose IP addresses are the subject of the instant lawsuit. Otherwise, he risks being assessed costs pursuant to Local Civil Rule 1.6(b).

I am second to none in my dismay at the theft of copyrighted material that occurs every day on the internet. However, there is a right way and a wrong way to litigate, and so far this way strikes me as the wrong way.

---

[4]     *Available at* http://nysd.uscourts.gov/rules/rules.pdf.

## CONCLUSION

This constitutes the decision and order of the Court. The Clerk is directed to remove the motions at ECF Nos. 11, 15, and 17 from the Court's list of pending motions.

Dated: May 15, 2012

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

*Attachment 6*

# Federal Computer Crimes

## TorrentLawyer™, a Cashman Law Firm, PLLC Blog – Where Computer Law & Criminal Law Meet

**Feeds:**
Posts
Comments

## New Arizona Rule: You are only properly joined with those you upload to or download from.

March 19, 2012 by houstonlawy3r

For those bittorrent users accused of copyright infringement in Arizona, there is a **new rule** which you can use in your defense.

Traditionally, in order to properly sue multiple bittorrent users together in one lawsuit, they need only to participate in the "same transaction or occurrence." In other words, they need to do the same "crime" at the same time. Not so in California, and NOW, not so in Arizona. [For the California citation, see Document 26 in the *Hard Drive Productions, Inc. v. Does 1-188* (Case No. 3:11-cv-01566 (http://www.scribd.com/doc/77245274/Order-to-Sever-01566) in the U.S. District Court for the Northern District of California.]

In bittorrent language, when you connect to a bittorrent swarm and download copyrighted media, all of you participating in that bittorrent swarm would be sued together. This is one of the most recent kinds of lawsuits by the more skilled plaintiff attorneys — instead of *Plaintiff v. John Does 1-123* (or however many John Doe Defendants there are lumped together [and separated by the state in which they reside] in this lawsuit), smarter plaintiffs are suing participants of the **swarm itself** (e.g., *Plaintiff v. Swarm of Nov. 3rd, 2011* [and participants thereof]). No longer in in Arizona.

**NEW RULE: Now in Arizona, in order to be sued with other John Doe Defendants, you must ha either UPLOADED TO or DOWNLOADED FROM each one of the other defendants.** If not, the defendants are not properly joined and defendants can be severed and dismissed from the case for improper joinder.

TODAY in the *Patrick Collins, Inc. v. John Does 1-54* (Case No. 2:11-cv-01602) case (//www.scribd.com/embeds/86003821/content?start_page=1&view_mode=list&access_key=key-2fdfgumg990ug6reuo9a" data-auto-height="true" data-aspect-ratio="0.772727272727273" scrolling="no" id="doc_23101" width="100%" height="600" frameborder="0"></iframe>) in the U.S. District Court for the District of Arizona, in U.S. District Judge G. Murray Snow's own words:

> Plaintiff alleges that the two remaining Defendants "participat[ed] in the BitTorrent swarm with other infringers" **but does not claim that John Doe 6 provided data to the former John Doe 12 or vice versa.** (Doc. 26 ¶ 56). ...

> ... Plaintiff alleges no facts that these two particular Defendants shared data **with each other**, and provides data instead that **they were logged on to BitTorrent weeks apart.** "The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." Hard Drive Prods., Inc. v. Does 1–188, 11 No. CV-11-01566, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011) (http://www.scribd.com/doc/77245274/Order-to-Sever-01566)

> (emphasis added).

*Personal Note: While this ruling is not immediately relevant if you do not live in Arizona, it is still good news because it indicates that judges are starting to understand how rules (here, the rules of "joinder") apply in the bittorrent context. No doubt, this order will be recognized and used in other cases in other jurisdictions as being persuasive as to how a judge should understand who can be sued together with whom. Soon it will no longer be permitted for an enterprising plaintiff (e.g., "copyright troll") to sue tens or hundreds of defendants in one lawsuit, lumping them together by the state in which they live (this lumping-together-by-state was the result of the dismissals last year over personal jurisdiction issues). I look forward to other judges in other states soon to adopt this ruling. It is a well thought-out understanding of the joinder issue.*

I have pasted the link to the order below for your enjoyment.

*Attachment 7*

# Federal Computer Crimes

## TorrentLawyer™, a Cashman Law Firm, PLLC Blog – Where Computer Law & Criminal Law Meet

**Feeds:**
  Posts
  Comments

## UPDATE 3: More of Mike Meier bittorrent cases consolidated.

March 12, 2012 by houstonlawy3r

*** *UPDATE (3/13, 11:45am CST): I might need to backpedal a bit here. I received word from an attorney who had ears in yesterday's hearing that Judge Forrest is <u>not</u> going to bust these cases as I thought she would. <u>The reason for the consolidations is to treat them as one larger case so that the rulings in each of the cases will be consistent throughout his many cases.</u> I am editing yesterday's blog posts with cross-outs (~~example~~) and underlines (<u>example</u>) so you can see where I am changing the tone of the blog post from overly optimistic to slightly somber. I will obviously post about the judge's order [UPDATE 3/14: <u>HERE</u> (http://ia600805.us.archive.org/24/items/gov.uscourts.nysd.390004/gov.uscourts.nysd.390004.9.0.pdf) - see <u>comments (https://torrentlawyer.wordpress.com/2012/03/12/update-more-of-mike-meier-bittorrent-cases-soon-to-go-bust/#comments)</u> below for commentary] once it becomes available.* ***

*** *UPDATE (3/12): As we initially <u>discussed (http://torrentlawyer.wordpress.com/2012/03/05/mike-meier-bittorrent-cases-frozen/)</u> last week, \*new cases\* have been handed over to Judge Forrest so that she can adjudicate the smaller bittorrent cases together. I have added them to the list below. They are not yet listed as part of the "consolidated" case list (in Case No. 1:11-cv-09705), but if you look at the case dockets for each case, the notations that Judge Forrest is now handling them should tip you off that these cases too ~~are now in trouble~~ <u>are now under her scrutiny.</u>* ***

<u>New Cases Now Handled By Judge Forrest:</u>

*Combat Zone Corp. v. Does 1-63 (Case No. 1:11-cv-09688)*
*Digital Sin, Inc. v. Does 1 – 179 (Case No. 1:11-cv-08172)*
*Media Products, Inc. v. Does 1-55 (Case No. 1:11-cv-09550)*
*Media Products, Inc. v. Does 1-36 (Case No. 1:12-cv-00129)*
*Media Products, Inc. v. Does 1-142 (Case No. 1:12-cv-01099)*
*Next Phase Distribution, Inc. v. Does 1-138 (Case No. 1:11-cv-09706)*
*Patrick Collins, Inc. v. Does 1-115 (Case No. 1:11-cv-09705)*
*SBO Pictures, Inc. v. Does 1-92 (Case No. 1:11-cv-07999)*
*SBO Pictures, Inc. v. Does 1-154 (Case No. 1:12-cv-01169)*
*Third Degree Films, Inc. v. Does 1-216 (Case No. 1:11-cv-09618)*
*Third Degree Films, Inc. v. Does 1-217 (Case No. 1:11-cv-07564)*
*Zero Tolerance Entertainment, Inc. v. Does 1-56 (Case No. 1:11-cv-09703)*

This is ~~obviously~~ relatively good news for the roughly 1,200+ John Doe Defendants ~~who can now breathe a bit more easily knowing that their plaintiff attorney's cases are in trouble~~ because 1) we now know that the judge is VERY aware of the MANY cases pending against the many Doe Defendants, and 2) rulings across the board will now be consistent — you will no longer have one judge letting one bittorrent case move forward, and another judge dismissing his bittorrent case for lack of joinder or improper jurisdiction. You can read about the judge's order regarding the original consolidated cases in our "New York Judge consolidates and freezes SMALLER BITTORRENT CASES for plaintiff attorney (http://torrentlawyer.wordpress.com/2012/03/05/mike-meier-bittorrent-cases-frozen/)" article No doubt similar orders will in time be written for these additional cases.

On a related note, Judge Forrest is not the only New York District Judge who has figured out what is going on with these copyright infringement ("copyright troll") cases.

Judge Colleen McMahon (no doubt these judges talk to each other about their cases) has issued an order in two cases (so far; response due 3/30) demanding that Mike Meier tell the court why his cases should not be dismissed due to the inherent joinder issues in his cases (e.g., how bittorrent users can be sued together under the theory that they committed the "same crime at the same time" theory [when according to the plaintiff's complaint, the bittorrent users committed the illegal act of downloading and/or seeding the copyrighted materials sometimes weeks if not months apart]).

What I enjoyed most in the order was that Judge McMahon accused Mike Meier of [essentially] CHEATING the court out of the $350 fees for each of the 138 defendants (e.g., theft from the court of $47,950) who, according to the judge's opinion should have been sued in SEPARATE cases. In addition, she states that the *"misjoinder has resulted in an undercounting of the number of cases filed in this court and a concomitant distortion of the size of the court's docket."* To make matters laughable, in response to a request from Mike Meier regarding one of the cases, she wrote, *"[u]ntil I have decided whether joinder of these 139 defendants is proper-which I very much doubt-there will be no discovery. Motion denied. Get to work on responding to any order to show cause."*

Cases involved:

*Patrick Collins, Inc., d/b/a Elegant Angel v. John Does 1-139 (Case No. 1:12-cv-01098)*
*Media Products, Inc. v. Does 1-59 (Case No. 1:12-cv-00125)*

UPDATE 3: More of Mike Meier bittorrent cases consolidated. « Federal Computer Crimes

I don't know about you, but **when a judge accuses you of stealing $47,950 from the court, wouldn't you worry** that your cases won't win? I expect to see more of these in the coming days and weeks with his other cases. ~~More significantly, I'd be surprised if I saw any more filings from Mike Meier in the Southern District of New York.~~ The last thing a copyright troll wants is a judge as an enemy who aggressively goes after his cases.

share

- Like Us On Facebook
- Share On Twitter
- Send To Friend
- Share on LinkedIn
- 
  Copy to Clipboard

Posted in <u>Computer Law</u>, <u>Federal Criminal Law</u>, <u>P2P</u>, <u>Peer-to-peer</u>, <u>Torrent</u> | Tagged <u>12cv125</u>, <u>1:11-cv-07564</u>, <u>1:11-cv-07999</u>, <u>1:11-cv-08172</u>, <u>1:11-cv-09550</u>, <u>1:11-cv-09618</u>, <u>1:11-cv-09688</u>, <u>1:11-cv-09703</u>, <u>1:11-cv-09705</u>, <u>1:12-cv-00129</u>, <u>1:12-cv-01098</u>, <u>Combat Zone</u>, <u>Combat Zone Corp.</u>, <u>Digital Sin</u>, <u>Digital Sin Inc.</u>, <u>Elegant Angel, Inc.</u>, <u>Media Products</u>, <u>Media Products Inc.</u>, <u>Meier</u>, <u>Mike Meier</u>, <u>Next Phase Distribution</u>, <u>Patrick Collins</u>, <u>Patrick Collins Inc.</u>, <u>SBO Pictures</u>, <u>SBO Pictures Inc.</u>, <u>Third Degree Films</u>, <u>Third Degree Films Inc.</u>, <u>Zero Tolerance</u>, <u>Zero Tolerance Entertainment</u> | 33 Comments

## 33 Responses

1. on <u>March 12, 2012 at 11:17 pm</u> | <u>Reply</u>  *anonymous*
   That is good news! I am surprised this hasn't happened sooner, maybe it has?

   My guess is Meier will dismiss all the suits.

2. on <u>March 12, 2012 at 11:33 pm</u> | <u>Reply</u>  *houstonlawy3r*
   The hearing between Mike Meier and Judge Forrest for ALL of these cases took place this afternoon at 3pm EST. I'm waiting to hear news now as we speak. (I suspect you are correct, or else this could be the last time a copyright troll files a case in the Southern District of New York.)

3. on <u>March 12, 2012 at 11:59 pm</u> | <u>Reply</u>  *un-defended*

Has anyone heard anything new on the cases specifically Case No. 411-cv-0570 (NDFL) where Mike Meier took over Terik Hashmi's cases?

Are we likely to see these cases dismissed? With or without prejudice, which way would the likely go?



- on *March 13, 2012 at 12:03 am* | *Reply*    *houstonlawy3r*
  @un-defended, as I wrote below (or above, however you're looking at it), the latest step is that Terik Hashmi filed an "I'm sorry" letter with the court re-stating all of the reasons why Mike Meier's brief why the case should move forward. It was actually quite pitiful in my opinion, and it did not answer the judge's question in the "order to show cause" order, which may or may not anger the judge further. I'm expecting a response from the court any day now. There i no indication as to whether the judge will dismiss or not, and whether a dismissal would be with prejudice or not. Just sit tight and keep an eye out for a response from the judge.

4. on *March 13, 2012 at 2:41 am* | *Reply*    *[PRIVATE]*
   So what should I do if I just got a subpoena notice regarding one of these cases? The previous post suggested sending the ISP a copy of the order. Now that there has been an update in the case, is there some new document to send? Where would I find it? Thanks.

5. on *March 13, 2012 at 4:54 pm* | *Reply*    *anonymous*
   He currently has 22 suits, targeting ~2654 does in NYSD.

   22 cases x $350 = $7,700

   2654 does x $350 = $928,900

   I would love to see the judge demand $921,200 from this guy.

6. on *March 14, 2012 at 11:39 am* | *Reply*    *observer*
   From Twitter feed on fightcopyrighttrolls.com :
   In a K-Beech case TXSD judge grants Doe's motion to quash, severs all (40) but one defendant
   http://t.co/XHzB8Dqi

   Decision primarily based on multiple joinder issues. Motion was filed pro-se. Link is to full filing. Thoughts?



- on *March 14, 2012 at 6:24 pm* | *Reply*    *houstonlawy3r*

Case 2:12-cv-02090-BMS   Document 9   Filed 06/06/12   Page 43 of 88

*Attachment 8*

# The Houston Lawyer Blog

## A Cashman Law Firm, PLLC Website

Feeds:
    Posts
    Comments

## Virginia Judge Severs and Dismisses ALL Malibu Media, LLC Bittorrent Cases

April 3, 2012 by houstonlawy3r

**I am happy to share that the first round of Virginia's *Malibu Media, LLC* cases have gone down in flames.**

As of this afternoon, I noticed that all of the *Malibu Media, LLC* cases in the Eastern District of Virginia received the same designation at the end of their case names, "*-CMH-TRJ,*" indicating that Magistrate Judge Thomas Rawles Jones, Jr. has taken over and has consolidated ALL of the Malibu Media, LLC cases in the Eastern District of Virginia. This is very similar to what happened in the Northern District of Florida with Terik Hashmi's cases (http://torrentlawyer.wordpress.com/2012/02/19/terik-hashmi-transnational-bittorrent-copyright-cases-fl-upl/) (**also all dismissed as of today**), and then in the Southern District of New York with Mike Meier's cases (http://torrentlawyer.wordpress.com/2012/03/05/mike-meier-bittorrent-cases-frozen/).

In short, **the best way for a judge to take down these smaller cases is to consolidate them, and then have them all stand or fall together.** As of this moment, in VA they are:

*Virginia Eastern District Court – David / Wayne O'Bryan of O'Bryan Law Firm*
*Malibu Media, LLC v. Does* (Case no. 1:12-cv-00159-CMH-TRJ)
*Malibu Media, LLC v. John Does 1-26* (Case no. 1:12-cv-00160-CMH-TRJ)
*Malibu Media, LLC v. John Does 1-26* (Case no. 1:12-cv-00161-CMH-TRJ)
*Malibu Media, LLC v. Does* (Case no. 1:12-cv-00162-CMH-TRJ)
*Malibu Media, LLC v. John Does 1-15* (Case no. 1:12-cv-00163-CMH-TRJ)
*Malibu Media, LLC v. Does* (Case no. 1:12-cv-00164-CMH-TRJ)
*Malibu Media, LLC v. John Does 1-27* (Case no. 1:12-cv-00165-CMH-TRJ)
*Malibu Media, LLC v. John Does 1-8* (Case no. 1:12-cv-00166-CMH-TRJ)

Here in short, **these cases have fallen**. The judge has indicated that all of these cases suffer from improper joinder, and thus *ALL Does other than Doe #1 in each case are severed and dismissed from the case.* Now there are only eight defendants in Virginia.

Of course, this is *terrible* news for the eight defendants, and no doubt the plaintiff attorneys will try to *scare the b'jeebies* out of these defendants, but really, if they are readers of this blog, they should know that the plaintiffs are still probably looking for settlements (although my guess is that they'll try to punish these eight Doe Defendants, and these eight defendants should make any attempt to settle VERY PUBLIC AND VISIBLE so that the judge sees what they do with them [or, to them]).

On a completely separate note, **this is VERY EXCITING news for all of those who have been SEVERED AND DISMISSED from their cases.** I have seen some local attorneys jump into the courts naming defendants, but here, Malibu Media's local attorney Wayne O'Bryan [in my opinion] seems to be a bit on the sluggish side. I would be floored if I started seeing him name anyone. It would simply take too much effort for him, and I'm not sure he's that hungry to go after everyone as other local counsel would.

So in short, congratulations to the Cashman Law Firm, PLLC clients, and to all those who have been dismissed from the case. The judge's order can be found below for your viewing enjoyment.

Virginia
Court Report

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv159 (CMH/TRJ) |
| | ) | |
| John Does 1-23, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv160 (CMH/TRJ) |
| | ) | |
| John Does 1-26, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv161 (CMH/TRJ) |
| | ) | |
| John Does 1-26, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv162 (CMH/TRJ) |
| | ) | |
| John Does 1-16, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv163 (CMH/TRJ) |
| | ) | |
| John Does 1-15, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv164 (CMH/TRJ) |
| | ) | |
| John Does 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv165 (CMH/TRJ) |
| | ) | |
| John Does 1-27, | ) | |
| | ) | |
| Defendants. | ) | |

|  |  |
|---|---|
| Malibu Media, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:12cv166 (CMH/TRJ) |
| | ) |
| John Does 1-8, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Patrick Collins, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:12cv167 (CMH/TRJ) |
| | ) |
| John Does 1-26, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPORT AND RECOMMENDATION

These matters are before the court on plaintiffs' motions for leave to serve third party subpoenas prior to a Rule 26(f) conference. Prior to the hearing on these motions, the court ordered plaintiffs to file supplemental briefing addressing the question whether defendants are properly joined pursuant to Fed. R. Civ. P. 20 in light of Judge Gibney's October 13, 2011 amended memorandum order in *K-Beech, Inc. v. Does 1-85*, Civil Action No. 3:11-cv-469 (E.D. Va.). Plaintiffs filed supplemental memoranda on March 2, 2012, and the court held a combined hearing on the motions and the question of joinder on March 9, 2012. Upon consideration of the record and applicable authority, and for the reasons stated below, the magistrate judge recommends that all but the first of the Doe defendants in each of these matters be severed, and that plaintiffs be permitted to serve discovery on the first Doe defendants' internet service

providers to learn their identities.

## Factual Background

The factual allegations in these matters are all essentially the same. Defendants are alleged to have illegally downloaded plaintiffs' copyrighted works through a filesharing protocol known as BitTorrent. In each case, all defendants are alleged to have shared the exact same digital copy of plaintiffs' works. Defendants in each case are further alleged to have participated in the same BitTorrent "swarm," as demonstrated by the fact that the pieces they downloaded bear the same cryptographic identifier.

## The BitTorrent Protocol

BitTorrent is a filesharing protocol that distributes the work of downloading and uploading files among several computers, thereby reducing the workload on the source of a file and enabling faster, more efficient sharing of large files. To use the protocol, a user installs a BitTorrent client on his or her computer. A user wishing to share a file uses the client to create a torrent descriptor file for the target file. The client breaks the target file into pieces, each of which is assigned a an alphanumeric identifier unique to the target file, known as a "hash." The original file is known as a "seed," and the user sharing it is known as a "seeder."

Other BitTorrent users then can begin downloading pieces of the target file. As each user downloads a piece, his BitTorrent client immediately makes that piece available to other users. Thus, it is not necessary for a user to download a particular piece from the original seeder, and the workload of sharing is distributed among a "swarm" of users. Once a user has downloaded all of the pieces of a file, the client compares the hash values of each piece against that recorded in the original torrent file to ensure that the reconstituted file is error-free. A user that has received all of the pieces can also become a new "seeder" using the reconstituted file as a new

"seed."

## Joinder

Permissive joinder of defendants is proper if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Misjoinder is not a ground for dismissal, but the court may sever a defendant it finds to be improperly joined. Fed. R. Civ. P. 21.

## BitTorrent and Joinder

Courts have split on the question whether joinder of defendants who have participated in the same BitTorrent swarm is appropriate. *See Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1157-64 (N.D. Cal. 2011) (discussing pre-BitTorrent filesharing jurisprudence and the split of authority on joinder in BitTorrent filesharing cases). Some courts have found that the nature of the BitTorrent protocol differs materially from previous peer-to-peer filesharing protocols, such that joinder of defendants who participated in the same BitTorrent swarm is appropriate. *See id.* at 1158-60 (collecting cases). Others, however, have rejected that principle. *See, e.g., id.* at 1160-64 (collecting Northern District of California cases); *Patrick Collins, Inc. v. Does 1-54*, No. CV-11-1602, 2012 WL 911432 (D. Ariz. Mar. 19, 2012); *K-Beech, Inc. v. Does 1-41*, No. V-11-46, 2012 WL 773683 (S.D. Tex. Mar. 8, 2012); *K-Beech, Inc. v. Does 1-85*, No. 3:11-cv-469, (E.D. Va. Oct. 13, 2011) (Gibney, J.).

In *K-Beech, Inc. v. Does 1-85*, Civil Action No. 3:11-cv-469, Judge Gibney held that participation in the same BitTorrent swarm is insufficient to link defendants for the purpose of joinder. The court agreed with the analysis in *Hard Drive Productions*, quoting the following

excerpt:

> Under the BitTorrent Protocol, it is not necessary that each of the Does 1–188
> participated in or contributed to the downloading of each other's copies of the work
> at issue—or even participated in or contributed to the downloading by any of the
> Does 1–188. Any "pieces" of the work copied or uploaded by any individual Doe
> may have gone to any other Doe *or to any of the potentially thousands who
> participated in a given swarm*. The bare fact that a Doe clicked on a command to
> participate in the BitTorrent Protocol does not mean that they were part of the
> downloading by unknown hundreds or thousands of individuals across the country
> or across the world. . . . Indeed, Plaintiff concedes that while the Doe Defendants
> may have participated in the same swarm, they may not have been physically present
> in the swarm on the exact same day and time.

*K-Beech* (quoting *Hard Drive Prods.*, 809 F. Supp. 2d at 1163-64). The court held that the

complaint, which alleged that the Doe defendants used the BitTorrent protocol to copy and

reproduce copyrighted material on different days and at different times over a span of three

months, did not meet the standards for joinder, and accordingly severed all of the defendants but

one.

## Analysis

Plaintiffs make four arguments in support of joinder. First, plaintiffs argue joinder is

appropriate where, as here, the group of defendants is limited to those who were part of the

"same swarm," *i.e.*, who downloaded pieces of the work bearing the same hash value, as

discussed above. Second, plaintiffs argue that joinder promotes judicial efficiency and that

joinder does not prejudice defendants at this stage. Third, plaintiffs state that if defendants are

severed, they intend to file 10 individual suits a week for 18 weeks, which will not be an efficient

use of the court's resources. Finally, plaintiffs argue that disallowing joinder would have the

effect of preventing plaintiffs' ability to enforce their copyrights.

Plaintiffs argue that their claims against these defendants arise out of the same transaction

or series of transactions because each defendant participated in the same BitTorrent "swarm," as

evidenced by the fact that each defendant downloaded and/or uploaded a piece or pieces of plaintiffs' works bearing the same cryptographic hash identifier. Thus, plaintiffs argue, defendants in each case are transactionally related because they were sharing data originating from the exact same file. Plaintiffs argue against requiring that each defendant be present in the swarm on the same day at the same time, as they characterize this court's holding in *K-Beech*, urging that such a rule runs counter to the flexible definition of "transaction," as construed by the courts.

Plaintiffs' argument regarding the flexible definition of "transaction" can be dismissed out of hand. The flexible nature of the transactional test is designed to permit a court to consider all of the relevant facts and arrive at a decision that is appropriate to those facts. That the parameters arrived at by the court ultimately are rigid is of no moment; determining the appropriate line is, indeed, the task of the court. Furthermore, it is not clear that either *K-Beech* or *Hard Drive Productions*, which *K-Beech* cited approvingly, required presence in the same swarm on the same day and at the same time. In *K-Beech*, this court stated only that the allegation that the defendants used the same protocol to share the same work on different days and times was insufficient. Similarly, the *Hard Drive Productions* court stated that the span of time covering the activity made the argument for joinder "unpersuasive." *See Hard Drive Prods.*, 809 F. Supp. 2d at 1164.

The principal question to be decided is whether uploading and/or downloading pieces of the exact same digital copy of a work through the BitTorrent protocol necessarily gives rise to the inference that defendants' actions are transactionally related. To that end, it is helpful to get away from plaintiffs' characterization of defendants as being part of the "same swarm." Ultimately, what plaintiffs have alleged is that defendants (or others using or spoofing

defendants' IP addresses) have shared pieces of the same digital copy of plaintiffs' works with others using the BitTorrent protocol. There is nothing suggesting with any specificity that any defendant shared those pieces with another defendant.

The court's questions about the span of time involved in *Hard Drive Productions* were prompted by concerns whether any of the defendants actually "acted in concert" with each other such that they were transactionally related for purposes of joinder. 809 F. Supp. 2d at 1163. The proper test for joinder in these cases lies in that concern. Indeed, at least one court has addressed that principle more explicitly, finding that joinder was unwarranted where only two defendants remained in the case and there was no showing of any exchange of data between those defendants. *See Patrick Collins, Inc. v. Does 1-54*, No. CV-11-1602, 2012 WL 911432, at *5 (D. Ariz. Mar. 19, 2012). Where, as here, a plaintiff seeks to join several defendants in an action based on filesharing activity, the magistrate judge finds that a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants. In these cases, as in *K-Beech* and *Hard Drive Productions*, the spans of time shown in plaintiffs' investigations make it difficult to draw the conclusion that there has been any actual exchange of data between and among the defendants in each case.[1]

Plaintiffs' remaining arguments are also unavailing. Plaintiffs' second argument, concerning judicial efficiency and absence of prejudice to defendants, nonetheless fails if joinder is inappropriate under Fed. R. Civ. P. 20, as the analysis above finds it to be. Plaintiffs' third and fourth arguments go to the costs of enforcing plaintiffs' copyrights. At least one other court has found such concerns to be outweighed by the risk of "coercing unjust settlements from innocent

---

[1] Exhibit A to the complaint in each case shows a span of at least two and a half months, and up to three and a half months, between the "hit dates" for the first and last defendants.

defendants" and inflation of copyright value by enhancement of settlement leverage. *See K-Beech, Inc. v. Does 1-41*, No. V-11-46, 2012 WL 773683, at * 5 & n.2 (S.D. Tex. Mar. 8, 2012). The same principle is applicable here. (And, the magistrate judge has inquired of the Clerk's staff, and has been advised that the alternative scenario of multiple suits described by plaintiff will not burden that office.)

### Recommendation

Accordingly, the magistrate judge recommends that all but the first of the Doe defendants in each of these matters be severed, and that plaintiffs then be permitted to serve discovery on these remaining defendants' internet service providers to learn their identities.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

April 3, 2012
Alexandria, Virginia

# Fight Copyright Trolls

Attachment
9

Let's demote copyright troll species' status first to endangered, then to extinct
Stay updated via RSS

## New York judge blasts trolls' practices, recommends banning mass bittorent lawsuits in the district

Posted: May 2, 2012 in Court documents, Victories
Tags: 11-cv-3995, 12-cv1147, 12-cv1150, 12-cv1154, Aaron Kotzker, copyright troll, copyright trolls, frederic, k-beech, Malibu Media, mass bittorent lawsuit, p2p lawsuit
72

i
13 Votes

*By Raul and SJD*

Yesterday Magistrate Judge Gary R. Brown (http://www.nyed.uscourts.gov/General_Information/Court_Phone_Book/Magistrate_Judges/GRB/grb.html) submitted an Order & Report & Recommendation (ORR) in the United States District Court for the Eastern District of New York involving four lawsuits, all of them related to the *"blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals utilizing a computer protocol known as BitTorrent."* A lawsuit on behalf of a pornographer K-Beech had been brought by Frederic Abramson (http://fightcopyrighttrolls.com/2011/12/18/frederic-abramson-respected-lawyer-or-just-another-copyright-troll/), and Aaron Kotzker (http://dietrolldie.com/2012/04/05/troll-jason-kotkzer-busy-filing-10-colorado-cases-for-malibu-media-and-patrick-collins/) had filed the other three lawsuits on behalf of Malibu Media. The judge decides to recommend that K-Beech's third part subpoenas be quashed, severs all Does from the remaining lawsuits with the exception of Doe 1 and prohibits the troll from obtaining Doe 1's telephone number and email address. In arriving at this conclusion the judge makes the following factual determinations:

The factual defenses presented are vastly different and highly individualized. One movant — John Doe #16 — has stated that he was at work at the time of the alleged download. John Doe #2 states under oath that he closed the subject Earthlink account, which had been compromised by a hacker, before the alleged download. K-Beech, Decl. of John Doe #2, ¶5, DE [34-1]. John Doe #29's counsel represents that his client is an octogenarian with neither the wherewithal nor the interest in using BitTorrent to download Gang Bang Virgins. DE [13]. John Doe #10 represents that downloading a copy of this film is contrary to her "religious, moral, ethical and personal views." Mtn ¶5, DE [7]. Equally important, notes that her wireless router was not secured and she lives near a municipal parking lot, thus providing access to countless neighbors and passersby.

[...]

[I]t is no more likely that the subscriber to an IP address carried out a particular computer function — here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call.

The judge even points to troll Meier's admission that there is a 30% rate of false positives in these lawsuits.

[M]ost, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.

Next the judge takes exception with the trolls' *"improper litigation tactics"* citing this statement from a sworn Doe statement as but one example:

Upon receipt of the Complaint, I reached out to Plaintiff and spoke to a self-described "Negotiator" in an effort to see if I could prove them (without the need for publicly tying my name to the Complaint) that I had nothing to do with the alleged copyrig infringements. **The Negotiator was offered unfettered access to my computer, my employment records, and any oth discovery they may need to show that I was not the culpable party.** Instead, the Negotiator refused and was only willing to sett the Complaint for thousands of dollars. While the Negotiator said on October 24, 2011 that he would check to see if he could con down from the thousands of dollar settlement amount, the Negotiator has not responded to two voice mails that were left on Octob 25, 2011. Notably, the Negotiator justified the settlement amount because, in part, I would incur legal fees in hiring an attorney.

He also quotes Judge Gibney (http://fightcopyrighttrolls.com/2011/10/06/judge%e2%80%99s-opinion-mass-p2p-lawsuits-are-frivolous/), who fou that the usual troll lawsuit is nothing more than a shakedown racket.

Having made these factual findings, Judge Brown next makes the following determinations of law:

1. K-Beech does not have a valid copyright registration, and its trademark infringement claim is idiotic (actually the judge decides that it fail state a claim). Likewise the possible negligence claim is disposed of in footnote 1 as nonsense.
2. That the trolls do not need the telephone numbers and email addresses of the Does to proceed with their lawsuits (they are only needed to furt abusive settlement strategies).
3. That the Does have an expectation of privacy in their internet activities.
4. That the *"most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case an related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants. Indeed, this may be principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly com themselves."* Further *"[t]he Federal Rules direct the Court to deny discovery "to protect a party or person from annoyance, embarrassment, oppressi or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This situation cries out for such relief"*
5. Permissive joinder is inappropriate for a host of reasons including that swarm joinder complicates the lawsuit and results in a waste of judi resources.
6. That *"[i]n the four cases before this Court, plaintiffs have improperly avoided more than \$25,000 in filing fees by employing its swarm joinder the Considering all the cases filed by just these three plaintiffs in this district, more than \$100,000 in filing fees have been evaded. If the reported estim that hundreds of thousands of such defendants have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing annually. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that t should profit without paying statutorily required fees."*

Even the footnotes in the ORR are a delight to read. An example is footnote 7 which reads:

Plaintiff K-Beech's rambling motion papers often lapse into the farcical. In its papers, counsel for K-Beech equate its difficulties with alle piracy of its adult films with those faced by the producers of the Harry Potter books, Beatles songs and Microsoft software, and compare efforts to collect from alleged infringers of its rights to the efforts of the FBI to combat child pornography. Mem. in Opp. at 4, 10, DE [22]. In ironic turn, the purveyors of such works as Gang Bang Virgins, explain how its efforts in this matter will help empower parents to prevent min from watching "movies that are not age appropriate" by ensuring that viewers must pay for plaintiffs products, and thereby effectively no parents of such activity because "many parents would surely notice if they showed up on billing statements." Id. at 7-8. It is difficult to accord plaintiff, which features "Teen" pornography on its website, the moral high-ground in this regard.

No doubt this is another super-milestone (the previous excellent ruling came from California (http://fightcopyrighttrolls.com/2012/04/06/the-cour not-willing-to-assist-a-troll-in-extrajudicial-business-says-the-judge/) a month ago), another nail in the coffin of the legal plague of copyright troll The order lists all the injustices and sleazy practices employed by the trolls. I have a feeling that we are not far away from hearing judges call tr practices by their actual names: **extortion, blackmail, and racket** and recommend Attorneys General to investigate the scammers. This or means that trolls are not welcome in the Eastern district of New York anymore, but of course it will impact court decisions country-wide, a foresee that more and more districts will follow EDNY's steps pretty soon.

Judge Brown concludes his excellent analysis (emphasis is mine):

For all of the reasons set forth herein, it is respectfully recommended as follows:

1. That the complaints in Malibu 26, Malibu 11 and Patrick Collins be dismissed, sua sponte and without prejudice, as to all defendants c than the individual designated as John Doe 1 in each action;

2. That the complaint in K-Beech be dismissed, sua sponte and without prejudice, in its entirety; and

3. That plaintiffs and their counsel in all four actions be directed that **any future actions of a similar nature in this district be file separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of jud resources, and to ensure the proper payment of filing fees.** See, e.g., DIRECTV, Inc. v. Armellino, 216 F.R.D. 240, 241 (E.D.N.Y. 2 (Spatt, J.) ("plaintiff is advised that all future claims of this nature must be instituted separately against individual defendants"), (citing Holdings Inc. v. Tack, CV 00–3555 (E.D.N.Y. June 16, 2000) (Seybert, J.)).

Case 2:12-cv-02090-BMS   Document 9   Filed 06/06/12   Page 57 of 88

R     W                    \   

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

‹            ›

- Download
- Share
- Embed

- 
- 
- 
- 
- 
- 1
  of26

View this document on Scribd (http://www.scribd.com/doc/92100289)

I'm humbled by judge's fairness and ability to listen to the public: I wish more judges look outside the sophistry of courtrooms and rule based on common sense and the spirit, not solely the letter, of the Law.

Interestingly, I have a strong suspicion that judge stumbled upon this blog: he mentions the Kevin Beechum involvement in criminal activity, which has not been widely publicized. I mentioned this fact in my post about Frederic Abramson (http://fightcopyrighttrolls.com/2011/12/18/frederic-abramson-respected-lawyer-or-just-another-copyright-troll/), one of the trolls being lashed by the judge.

## Media coverage

***Bold**: an article links back to this post (It's fine not to or link to or mention this site: spreading the news is by far more important. Nonetheless, always appreciated and makes us happy.)*

- **ArsTechnica**: Furious judge decries "blizzard" of copyright troll lawsuits (http://arstechnica.com/tech-policy/news/2012/05/furious-judge-decries-blizzard-of-copyright-troll-lawsuits.ars) by Timothy B. Lee.
- **TorrentFreak**: Judge: An IP-Address Doesn't Identify a Person (or BitTorrent Pirate) (https://torrentfreak.com/judge-an-ip-address-doesnt-identify-a-person-120503/) by Ernesto
- **WebProNews**: New York Judge Slaps Down Piracy Lawsuit (http://www.webpronews.com/new-york-judge-slaps-down-piracy-lawsui-2012-...) by Shaylin Clark
- **BoingBoing**: Fed judge to copyright trolls: get bent (http://boingboing.net/2012/05/03/judges-hate-copyright-trolls-t.html) by Cory Doctorow (Initially posted short version: Rob Beschizza)
- **IDG Sweden**: Amerikansk domare sågar IP-nummer som "bevis" i fildelningsmål (http://blogg.idg.se/freedom/2012/05/03/amerikansk-domare-sagar-ip-nummer-som-bevis-i-fildelningsmal/) by Patrik Söderlund
- **Minyanville**: Judge Has Had Enough of Copyright Trolls (http://www.minyanville.com/dailyfeed/2012/05/03/judge-has-had-enough-of/) Sara Churchville
- **Futurzone.at**: Urteil: IP-Adresse identifiziert keine Person (http://futurezone.at/digitallife/8904-urteil-ip-adresse-identifiziert-keine-person.php)
- **ZDNet**: Court slaps down the use of IP addresses in file-sharing cases (http://www.zdnet.com/blog/networking/court-slaps-down-the-use-of-ip-addresses-in-file-sharing-cases/2365) by Steven J. Vaughan-Nichols
- **PC World**: Judge Throws out Mass John Doe Porn Copyright Laws (http://www.pcworld.com/businesscenter/article/255061/judge_throws_out_mass_john_doe_porn_copyright_laws.html) by Grant Gross, IDG News
- **Techdirt**: Yet Another Judge Slams Copyright Trolls: Warns That Courts Should Not Be Used To 'Bludgeon' People Into Settling (http://www.techdirt.com/articles/20120502/12464018743/yet-another-judge-slams-copyright-trolls-warns-that-courts-should-not-be-used-to-bludgeon-people-into-settling.shtml) by Mike Masnick
- **DailyTech**: Another Judge Rules IP Addresses Can't be Used to Identify People (http://www.dailytech.com/article.aspx?newsid=24614) by Jason Mick
- **Daily Dot**: Judge Rules: You are not your computer (http://www.dailydot.com/news/ruling-ip-address-computers-people/) by Kevin Collier
- **Theche Buzz**: Judge Rules That an IP Address Is Not Equivalent to a Person (http://techie-buzz.com/tech-news/judge-rules-bittorrent-ip-address-not-person.html) by Chinmoy Kanjilal
- **Gizmodo**: Judge Rules You Can't Be (Definitively) Identified by Your IP Address (http://gizmodo.com/5907290) by Kyle Wagner
- **Batabeat**: Blow for BitTorrent Lawsuits: New York Judge Rules an IP Address Is Not a Person (http://www.betabeat.com/2012/05/03/bittorr...

lawsuit-judge-gary-brown-ip-address-is-not-a-person-05032012/) by Nitasha Tiku

o  PC Magazine (Security Watch): IP Address Not a Person, Judge Says in Copyright Lawsuit (http://securitywatch.pcmag.com/security/297475-address-not-a-person-judge-says-in-copyright-lawsuit) by Fahmida Y. Rashid

o  Mitch   Stoltz   of   the   EFF   gives   his   take   on   Judge   Gary   Brown's   ORR   (http://www.youtube.com/watch?v=USbVKJuRpl8&feature=player_embedded)

o  Time/Techland: You Are Not an IP Address, Rules Judge (http://techland.time.com/2012/05/07/you-are-not-an-ip-address-rules-judge/) by Keith Wagstaff

o  CINET: IP address doesn't ID individuals in piracy lawsuit, judge rules (http://news.cnet.com/8301-1023_3-57427671-93/ip-address-doesnt-individuals-in-piracy-lawsuit-judge-rules/) by Steven Musil

o  Digital Trends: IP address not enough to identify online pirates, judge rules (http://www.digitaltrends.com/web/ip-address-not-enough-identify-online-pirates-judge-rules/) by Andrew Couts

o  TechEye.net: IP addresses are not enough to spot pirates (http://news.techeye.net/security/ip-addresses-are-not-enough-to-spot-pirates) by Edward Berridge

o  NDT Television: IP Address Is Not Identity, NY Judge Rules (http://english.ntdtv.com/ntdtv_en/news_NorthAmerica/2012-05-03/IP-Address-Is-Not-Identity-NY-Judge-Rules.html) by Victor Chen

o  ITPro Portal: Judge Rules IP Address Doesn't Identify A Pirate (http://www.itproportal.com/2012/05/04/judge-rules-ip-address-doesnt-identify-pirate/) by Jon Martindale

o  The   Verge:   NY   magistrate   judge:   IP   addresses   not   an   effective   way   to   identify   alleged   pirates (http://www.theverge.com/2012/5/3/2997869/magistrate-judge-ip-addresses-not-effective-identify-pirates) by Bryan Bishop

o  GeekOlogy: Can You Be Legally Identified By Your IP Address? (http://ology.com/post/75708/can-you-be-legally-identified-by-your-ip-address) by Jonah Gardner

o  TweakTown:   The   legal   system   works:   Judge   rules   IP   addresses   are   not   enough   to   incriminate   pirates (http://www.tweaktown.com/news/23936/the_legal_system_works_judge_rules_ip_addresses_are_not_enough_to_incriminate_pirates/index.html) by Trace Hagan

o  Eric Goldman's blog: New York Judge *Slams* Bittorrent Copyright Plaintiffs – K-Beech; Malibu Media; and Patrick Collins v. D (http://blog.ericgoldman.org/archives/2012/05/new_york_judge.htm) by Venkat Balasubramani

Also, don't miss this amazing video! (http://fightcopyrighttrolls.com/2012/05/04/adult-filmmakers-get-legal-smackdown/)

Comments

1. Judge Throws out Mass John Doe Porn Copyright Lawsuits | Tux Doc says:
   May 6, 2012 at 11:59 am

        0

        0

     i
     Rate This

   [...] film is tenuous, and one that has grown more so over time," Brown wrote in his ruling, first noted by the Fight Copyright Trolls blog. "An IP address provides only the location at which one of any number of computer devices may [...]

   Reply
   o  Raul says:
      May 6, 2012 at 12:53 pm

           0

           0

        i
        Rate This

      From the post:

      "K-Beech disagrees with the judge's decision, said Frederic Abramson, a lawyer for the studio. K-Beech will move forward with its lawsuit against John Doe No. 1, he said."

      In the highly unlikely event they do move forward (it is a "Gang Bang Virgins" which now possesses a shaky copyright) , wanna bet that will not be with Troll Abramson?

      Reply
      o  Raul says:
         May 9, 2012 at 1:50 pm

*Eastern District
of NY Court
Remark*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IN RE: BITTORRENT ADULT FILM
COPYRIGHT INFRINGEMENT CASES

**ORDER &**
**REPORT & RECOMMENDATION**
Civil Action Nos.
11-3995(DRH)(GRB);
12-1147(JS)(GRB);
12-1150(LDW)(GRB); and
12-1154(ADS)(GRB)

------------------------------------------------------------------X

**APPEARANCES:**
**K-Beech, Inc. v. John Does 1-37, CV 11-3995 (DRH)(GRB):**

For Plaintiff
Frederic R. Abramson, Esq.
160 Broadway, Suite 5000
New York, New York   10038

For Defendant John Doe #2
Joseph P. Augustine, Esq.
Augustine & Eberle LLP
90 Broad Street, Floor 25
New York, New York   10004

For Defendant John Doe #29
James Rosenzweig, Esq.
560 Fifth Avenue, 3rd Ave.
New York, New York   10036

For Defendant John Doe #35
James D. Murtha, Esq.
26 Railroad Ave. #351
Babylon, New York   11702

**Malibu Media, LLC v. John Does 1-26, CV 12-1147 (JS) (GRB),**
**Malibu Media, LLC v. John Does 1-11, CV 12-1150 (LDW) (GRB),**
**Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB):**

For Plaintiffs
Jason Aaron Kotzker
Kotzker Law Group
9609 S. University Blvd. #632134
Highlands Ranch, Colorado   80163

1

**GARY R. BROWN, United States Magistrate Judge:**

These actions are part of a nationwide blizzard of civil actions brought by purveyors of

pornographic films alleging copyright infringement by individuals utilizing a computer protocol

known as BitTorrent. The putative defendants are identified only by Internet Protocol ("IP")

addresses. These four civil actions involve more than 80 John Doe defendants; these same

plaintiffs have filed another nineteen cases in this district involving more than thrice that number

of defendants.[1] One media outlet reports that more than 220,000 individuals have been sued since

mid-2010 in mass BitTorrent lawsuits, many of them based upon alleged downloading of

pornographic works.[2]

This Order addresses (1) applications by plaintiffs in three of these actions for immediate

discovery, consisting of Rule 45 subpoenas directed at non-party Internet Service Providers

("ISPs") to obtain identifying information about subscribers to the named IP addresses and (2)

motions to quash similar subpoenas by several putative John Doe defendants in the remaining

action. For the reasons that follow, including evidence of abusive litigation tactics by plaintiffs,

the plaintiffs' applications for service of subpoenas are granted only as to John Doe 1 in each case

under terms and conditions set forth herein, and denied in all other respects. The motions to

quash are granted because the work in that action is not subject of a copyright registration.

Furthermore, it is respectfully recommended to the respective district judges that (1) as to

---

[1] *See Patrick Collins, Inc. v. Does 1-7*, CV 11-1270 (JG) (RER) (80 defendants in consolidated case); *K-Beech, Inc. v. Does 1-29*, CV 11-3331 (JFB) (ETB); *K-Beech, Inc. v. Does 1-37*, CV 11-3741 (LDW) (AKT); *K-Beech, Inc. v. Does 1-52*, CV 11-3994 (JFB) (ETB); *Patrick Collins. Inc. & K-Beech, Inc. v. Doe*, CV 11-4094 (JFB) (GRB); *Malibu Media, LLC v. Does 1-10*, CV 12-1146 (JS) (ETB); *Malibu Media, LLC v. Does 1-20*, CV 12-1148 (ADS) (AKT); *Malibu Media, LLC v. Does 1-30*, CV 12-1149 (LDW) (AKT); *Patrick Collins, Inc. v. Does 1-11*, CV 12-1153 (JFB) (ARL); *Malibu Media, LLC v. Does 1-13*, CV 12-1156 (JFB) (ETB).

[2] *See* http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk.

2

three of the actions, the matters be dismissed without prejudice as to all defendants other than John Doe 1; (2) that the fourth action be dismissed without prejudice; and (3) that these plaintiffs and their counsel be directed that all future actions be filed only against a single defendant.

## BACKGROUND

### 1. Allegations in the Complaints

The four complaints that are subject to this Order are nearly identical, though each involves a different pornographic film, to wit: *Gang Bang Virgins, Veronica Wet Orgasm, Maryjane Young Love* and *Gangbanged. See K-Beech, Inc. v. Does 1-37*, CV 11-3995 (DRH)(GRB) (hereinafter "*K-Beech*"); *Malibu Media LLC v. Does 1-26*, CV 12-1147(JS)(GRB) (hereinafter "*Malibu 26*"); *Malibu Media LLC v. Does 1-11*, CV 12-1150 (LDW)(GRB) (hereinafter "*Malibu 11*"); and *Patrick Collins, Inc. v. Does 1-9*, CV 12-1154 (ADS)(GRB) (hereinafter "*Patrick Collins*"). In three of the cases, plaintiff claims to be the owner of a copyright registered for the work in question. *See, e.g., Malibu 26,* Complaint at ¶¶11-13, Docket Entry ("DE") [1]. In *K-Beech,* plaintiff claims only that an application for copyright has been submitted as to its work *Gang Bang Virgins. K-Beech,* Am. Compl. at ¶¶11-12, DE [18]. Each defendant is identified only by an IP address purportedly corresponding to a physical address in this district, defined in the complaint as "a number that is assigned by an ISP to devices, such as computers, that are connected to the Internet." *Malibu 26,* Compl. at ¶8. The Complaints further allege that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." *Id.* at ¶9.

The complaints describe, in some detail, a peer-to-peer filing sharing protocol known as BitTorrent which is a means by which devices connected to the Internet can share large computer files (such as digital copies of movies) while minimizing the strain on computer networks. *See,*

3

*e.g., Malibu 26,* Compl. at ¶¶14-15. BitTorrent works by breaking files into many smaller files "to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), [and] allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)." *Id.* at ¶15. BitTorrent also uses a "tracker" computer that tracks the pieces of the files as those pieces are shared among various computers. This tracking feature the plaintiffs to identify the IP addresses from which the films were downloaded, the subscribers to which have become the defendants in these actions. *Id.* ¶¶24-26.

## 2. Plaintiffs' Motions for Early Discovery

Plaintiffs in *Malibu 26, Malibu 11, and Patrick Collins* have filed motions for leave to file non-party subpoenas prior to a Rule 26(f) conference, seeking to serve subpoenas upon the ISPs to identify the subscribers to the subject IP addresses. Specifically, these subpoenas seek the "true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address." *See, e.g., Malibu 26,* Proposed Order, DE [3-2].

## 3. Motions to Quash

By order dated September 16, 2011, the Honorable A. Kathleen Tomlinson granted a nearly identical motion for early discovery in *K-Beech. See K-Beech,* Order of 9/16/11, DE [6]. However, to protect the rights of all parties, Magistrate Judge Tomlinson established a procedure by which both the ISPs and the John Does were afforded an opportunity to move to quash before the information was provided to K-Beech. The procedure Magistrate Tomlinson implemented elicited information that not only permits reasoned review of the motions to quash, but also provides insight into the pending motions for early discovery.

4

A total of six putative John Doe defendants moved to quash, *see K-Beech,* Motions, DE [7], [13], [14], [16], [17], & [34], while a seventh had counsel appear without filing a motion. Several motions include fact based arguments which are highly individual to each moving party, as well as legal arguments.   One argument common to all of these motions arises from the fact that, according to the allegations, K-Beech does not have a registered copyright to *Gang Bang Virgins,* but premises its action on a copyright application.   K-Beech has amended its complaint to include trademark allegations, but, notably, has not alleged the receipt of a copyright registration.   As detailed below, the registration argument is a sufficient basis to grant the motions to quash, though not the sole basis.

### 4.  Additional Facts

#### a.  Factual Defenses Raised by the Moving John Doe Defendants

The factual defenses presented are vastly different and highly individualized.   One movant – John Doe # 16 – has stated that he was at work at the time of the alleged download.   John Doe #2 states under oath that he closed the subject Earthlink account, which had been compromised by a hacker, before the alleged download.  *K-Beech,* Decl. of John Doe #2, ¶5, DE [34-1].  John Doe #29's counsel represents that his client is an octogenarian with neither the wherewithal nor the interest in using BitTorrent to download *Gang Bang Virgins.*  DE [13]. John Doe #10 represents that downloading a copy of this film is contrary to her "religious, moral, ethical and personal views." Mtn ¶5, DE [7].  Equally important, she notes that her wireless router was not secured and she lives near a municipal parking lot, thus providing access to countless neighbors and passersby.[3]   *Id.* at ¶4

---

[3] While Plaintiffs claim that they can amend their complaints to allege negligence against the owner of a WiFi router who failed to password-protect the device which was then used by an intruder to infringe its copyright, *see* K-Beech

5

#### b. The Use of IP Address to Identify the Alleged Infringers

The complaints assert that the defendants – identified only by IP address – were the

individuals who downloaded the subject "work" and participated in the BitTorrent swarm.

However, the assumption that the person who pays for Internet access at a given location is the

same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that

has grown more so over time. An IP address provides only the location at which one of any

number of computer devices may be deployed, much like a telephone number can be used for any

number of telephones. As one introductory guide states:

> If you only connect one computer to the Internet, that computer can
> use the address from your ISP. Many homes today, though, use
> routers to share a single Internet connection between multiple
> computers. Wireless routers have become especially popular in
> recent years, avoiding the need to run network cables between
> rooms. If you use a router to share an Internet connection, the
> router gets the IP address issued directly from the ISP. Then, it
> creates and manages a subnet for all the computers connected to that
> router.[4]

Thus, it is no more likely that the subscriber to an IP address carried out a particular computer

function – here the purported illegal downloading of a single pornographic film – than to say an

individual who pays the telephone bill made a specific telephone call.

Indeed, due to the increasingly popularity of wireless routers, it much less likely. While a

decade ago, home wireless networks were nearly non-existent, 61% of US homes now have

wireless access.[5] Several of the ISPs at issue in this case provide a complimentary wireless router

as part of Internet service. As a result, a single IP address usually supports multiple computer

---

Mem. in Opp. at 24, DE [10], this assertion flies in the face of common sense.

4 *See* "What is an IP address?" available at http://computer.howstuffworks.com/internet/basics/question5492.htm.

5 Lardinois, F.. "Study: 61% of US Households Now Have WiFi," available at http://techcrunch.com, 4/5/12.

6

devices – which unlike traditional telephones can be operated simultaneously by different

individuals. *See U.S. v. Latham*, 2007 WL 4563459, at *4 (D.Nev. Dec. 18, 2007). Different

family members, or even visitors, could have performed the alleged downloads. Unless the

wireless router has been appropriately secured (and in some cases, even if it has been secured),

neighbors or passersby could access the Internet using the IP address assigned to a particular

subscriber and download the plaintiff's film. As one court noted:

> In order to allow multiple computers to access the internet under the
> same IP address, the cable modem may be connected to a router, or
> may itself function as a router, which serves as a gateway through
> which multiple computers could access the internet at the same time
> under the same IP address. The router could be a wireless device in
> which case, computers located within 300 feet of the wireless router
> signal could access the internet through the router and modem under
> the same IP address. The wireless router signal strength could be
> increased beyond 600 feet if additional devices are added. The only
> way to prevent sharing of the wireless router is to encrypt the signal
> and even then an individual can bypass this security using publicly
> available software.

*Id.* at *4. Some of these IP addresses could belong to businesses or entities which provide access

to its employees, customers and sometimes (such as is common in libraries or coffee shops)

members of the public.

These developments cast doubt on plaintiffs' assertions that "[t]he ISP to which each

Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity."

*see, e.g., Malibu 26*, Compl. at ¶9, or that the subscribers to the IP addresses listed were actually

the individuals who carried out the complained of acts. As one judge observed:

> The Court is concerned about the possibility that many of the names
> and addresses produced in response to Plaintiff's discovery request
> will not in fact be those of the individuals who downloaded "My
> Little Panties # 2." The risk is not purely speculative; **Plaintiff's**
> **counsel estimated that 30% of the names turned over by ISPs**
> **are not those of individuals who actually downloaded or shared**

7

> **copyrighted material.**  Counsel stated that the true offender is
> often the "teenaged son ... or the boyfriend if it's a lady."
> Alternatively, the perpetrator might turn out to be a neighbor in an
> apartment building that uses shared IP addresses or a dormitory that
> uses shared wireless networks.  This risk of false positives gives
> rise to the potential for coercing unjust settlements from innocent
> defendants such as individuals who want to avoid the
> embarrassment of having their names publicly associated with
> allegations of illegally downloading "My Little Panties # 2."

*Digital Sin, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at \*3 (S.D.N.Y. Jan. 30, 2012)

(citations omitted and emphasis added).  Another court noted:

> the ISP subscriber to whom a certain IP address was assigned may
> not be the same person who used the Internet connection for illicit
> purposes . . . By defining Doe Defendants as ISP subscribers who
> were assigned certain IP addresses, instead of the actual Internet
> users who allegedly engaged in infringing activity, Plaintiff's
> sought-after discovery has the potential to draw numerous innocent
> internet users into the litigation, placing a burden upon them that
> weighs against allowing the discovery as designed.

*SBO Pictures, Inc. v. Does 1-3036,* 2011 WL 6002620, at \*3 (N.D.Cal. Nov. 30, 2011) (citations

omitted).

In sum, although the complaints state that IP addresses are assigned to "devices" and thus

by discovering the individual associated with that IP address will reveal "defendants' true

identity," this is unlikely to be the case.  Most, if not all, of the IP addresses will actually reflect a

wireless router or other networking device, meaning that while the ISPs will provide the name of

its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an

employee, invitee, neighbor or interloper.

### c. Indicia of Unfair Litigation Tactics

One moving defendant has provided concrete evidence of improper litigation tactics

employed by K-Beech.  In a sworn declaration, John Doe #16 states the following:

8

> Upon receipt of the Complaint, I reached out to Plaintiff and spoke
> to a self-described "Negotiator" in an effort to see if I could prove to
> them (without the need for publicly tying my name to the
> Complaint) that I had nothing to do with the alleged copyright
> infringements. **The Negotiator was offered unfettered access to
> my computer, my employment records, and any other discovery
> they may need to show that I was not the culpable party.** Instead,
> the Negotiator refused and was only willing to settle the Complaint
> for thousands of dollars. While the Negotiator said on October 24,
> 2011 that he would check to see if he could come down from the
> thousands of dollar settlement amount, the Negotiator has not
> responded to two voice mails that were left on October 25, 2011.
> Notably, the Negotiator justified the settlement amount because, in
> part, I would incur legal fees in hiring an attorney.

*K-Beech*, Decl. of John Doe #16, at 11-12 , DE [16] (emphasis added).   Significantly, since

plaintiff has not yet been provided with the identities of the moving John Does, this record exists

only because John Doe #16 proactively contacted counsel for K-Beech (who is also representing

Patrick Collins, Inc. in another matter), rather than await a determination by the Court.   John Doe

#16's experience directly mirrors that of defendants in a separate action by plaintiff K-Beech

regarding *Gang Bang Virgins*, as well as another action filed by Patrick Collins, Inc. relating to a

film entitled *Cuties*.   *See K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6

(E.D.Va. Oct. 5, 2011) ("Some defendants have indicated that the plaintiff has contacted them

directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation")

and *Patrick Collins, Inc. v. Does 1-58*, 2011 U.S. Dist. LEXIS 120235, at *6 (E.D.Va. Oct. 5,

2011) (same); *cf. Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025, at *2 (E.D.Va. Oct. 5,

2011)(same).[6]

　　Remarkably, plaintiff's opposition to John Doe #16's motion, encompassing 62 pages of

---

[6] In these cases, counsel for K-Beech and Patrick Collins, Inc. was directed to show cause why Rule 11 sanctions should not be imposed for this conduct, but ultimately sanctions were not imposed.

material,[7] does not provide any evidentiary response to these sworn assertions of improper

conduct. Rather, counsel attempts to dismiss this evidence as "mere denials", and unabashedly

argues that "[d]efendant's] assertion that the negotiations between him and Plaintiff have ended

further supports the need for litigation." Pl's. Mem. In Opp. at 24, DE [22]. Moreover, K-Beech

has filed "Notices of Settlement and Voluntary Dismissal" as to three of the John Does in this

action. *See* DE [30], [31] and [38]. "This course of conduct indicates that the plaintiffs have

used the offices of the Court as an inexpensive means to gain the Doe defendants' personal

information and coerce payment from them. The plaintiffs seemingly have no interest in actually

litigating the cases, but rather simply have used the Court and its subpoena powers to obtain

sufficient information to shake down the John Does." *Raw Films*, 2011 WL 6182025, at *2.

In a similar case by plaintiff Patrick Collins filed in this district, after being granted

discovery of the IP subscribers, counsel for that entity described in motion papers the intended

approach to the John Doe defendants:

> Plaintiff requested and was granted additional time within which to
> effectuate service upon the Doe Defendants to accommodate
> Plaintiff's need for obtaining their identifying information, as well
> as its further settlement and litigation strategy. The latter involves
> Plaintiff contacting Doe Defendants once their identities are known
> and attempting to reach a settlement with them. In cases where a
> settlement cannot be reached, Plaintiff would then consider the
> feasibility of filing suit, and proceed with service upon those Doe
> Defendants against whom it chooses to proceed.

---

[7] Plaintiff K-Beech's rambling motion papers often lapse into the farcical. In its papers, counsel for K-Beech equate its difficulties with alleged piracy of its adult films with those faced by the producers of the Harry Potter books, Beatles songs and Microsoft software, and compare its efforts to collect from alleged infringers of its rights to the efforts of the FBI to combat child pornography. Mem. in Opp. at 4, 10, DE [22]. In an ironic turn, the purveyors of such works as *Gang Bang Virgins*, explain how its efforts in this matter will help empower parents to prevent minors from watching "movies that are not age appropriate" by ensuring that viewers must pay for plaintiffs products, and thereby effectively notify parents of such activity because "many parents would surely notice if they showed up on billing statements." *Id.* at 7-8. It is difficult to accord the plaintiff, which features "Teen" pornography on its website, the moral high-ground in this regard.

*Patrick Collins, Inc. v. Does 1-7,* CV 11-1270 (JG)(RER), Mtn, DE [22], at ¶ 6.   On a cold record,

this overview could be viewed as a reasoned approach.   However, when viewed against

undisputed experience of John Doe #16, described above, and findings by other courts, this

suggests an approach that is highly inappropriate.

## DISCUSSION

### The Legal Standard

Federal Rule of Civil Procedure 26(d)(1) forbids a party from seeking discovery "from any

source before the parties have conferred as required by Rule 26(f) except as "authorized ... by court

order."   Fed. R. Civ. P. 26(d) (1).   This is generally viewed as requiring a showing of good

cause.   *See, e.g., Ayyash v. Bank Al–Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005).   Plaintiffs

rely principally upon the five factor *Sony Music* test, adopted by the Second Circuit, which

requires the Court to weigh:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie
> claim of actionable harm, ... (2) [the] specificity of the discovery
> request, ... (3) the absence of alternative means to obtain the
> subpoenaed information, ... (4) [the] need for the subpoenaed
> information to advance the claim, ... and (5) the [objecting] party's
> expectation of privacy.

*Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v.*

*Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)).   This test, articulated in the context of

evaluating a motion to quash, frames the inquiry in evaluating defendants' motions in *K-Beech.*

Additionally, plaintiffs correctly note that the test is also instructive in evaluating the motions for

early discovery.

### Element 1: Prima Facie Claim of Actionable Harm

Plaintiffs Malibu and Patrick Collins have set forth *prima facie* claims of actionable harm

11

by alleging ownership of registered, copyrighted works that have been infringed.[8]

The situation with K-Beech is far different.   K-Beech does not allege that it has a

copyright registration; rather, it bases its complaint on a copyright application.   In another case in

this district,   *K-Beech v. Does 1-29*, CV 11-3331, Magistrate Judge Boyle denied K-Beech the

precise relief sought in the instant application based on a failure to allege that its copyright in the

work in that case – *Virgins 4* – had been registered.   Judge Boyle found:

> Section 411(a) of the Copyright Act "requires copyright holders to
> register their works before suing for copyright infringement." *Reed
> Elsevier, Inc. v. Muchnick*, — U.S. —, 130 S. Ct. 1237, 1241, 176 L.
> Ed. 2d 18 (2010) (citing 17 U.S.C.A. § 411(a)). While failure to
> register a work does not deprive a federal court of jurisdiction over
> an action for infringement, valid registration is an element of an
> infringement claim. Although the Second Circuit has not addressed
> this specific question, courts in both the Eastern District of New
> York and the Southern District of New York have held that
> submission of an application for copyright registration does not
> satisfy the registration precondition of § 411(a).

Order of 9/19/11 at 2-3 (additional quotations and citations omitted), DE [10].   Judge Boyle

denied the requested discovery, and K-Beech voluntarily dismissed the case. *See* DE [12].   I agree

with Judge Boyle and find that K-Beech has not met its burden on this factor.

K-Beech attempted to remedy this deficiency by adding conclusory trademark claims

to its amended complaint.   The complaint fails to explain in what ways the illegal downloading

and uploading alleged could possibly cause confusion among consumers, or "hamper efforts by

---

[8] For the purposes of this analysis, it is assumed that plaintiffs' works are entitled to copyright protection, though that may be an open question.  *See Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 447 n.2 (D.Mass. 2011) (it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement").

Plaintiff to protect its reputation" with "the purchasing public in New York."[9]  Am. Compl.

¶¶64-67, DE [18].    K-Beech's citation to *dicta* in the Supreme Court's decision in *Dastar* is

unavailing, as that case's holding undercuts plaintiff's attempt to extend trademark protection to

these facts.  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) ("in

construing the Lanham Act, we have been careful to caution against misuse or over-extension of

trademark and related protections into areas traditionally occupied by copyright" (citation

omitted)).   Even viewed in the most favorable light, the trademark allegations fail to state a claim.

## Elements 2: The Specificity of the Discovery Requests

With respect to the specificity of discovery requests, the *Sony Music* court explained that

this factor requires that "Plaintiffs' discovery request is also sufficiently specific to establish a

reasonable likelihood that the discovery request would lead to identifying information that would

make possible service upon particular defendants who could be sued in federal court."  *Sony*

*Music*, 326 F. Supp. 2d at 566.   While the discovery propounded by plaintiffs is specific, for the

reasons discussed above, it does not establish a reasonable likelihood it will lead to the identity of

defendants who could be sued. *See Pacific Century Int'l Ltd. v. Does*, 2011 WL 5117424, at *2

(N.D.Cal. Oct. 27, 2011) ("Plaintiff must go beyond the 'limited discovery' that it earlier asserted

would lead to Defendants' identities . . . [p]resumably, every desktop, laptop, smartphone, and

tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other

---

[9] As K-Beech put its reputation into issue, it is worth noting that the owner of K-Beech Inc. (and the apparent inspiration for the K-Beech mark) is Kevin Beechum.  *See* "Porn studios raided to ensure adult-only casts," 1/12/07, *LA Times* at 1.  It appears that this is the same Kevin Beechum who testified in federal prosecutions about his experience vandalizing retail adult video stores to help extort protection payments from their owners.  *See U.S. v. Feinberg*, 89 F.3d 333, 335 (7th Cir. 1996); *U.S. v. Sturman*, 49 F.3d 1275, 1278 (7th Cir. 1995).  In those cases, Beechum described how he hired associates to use hammers and baseball bats to inflict $10,000 in damage on a Phoenix adult shop, and negotiated over a "few more jobs" in Cleveland.   Other evidence established that, following Beechum's introduction, these same associates, on behalf of the extortionists, planned to plant remote control bombs at eight stores in Chicago in furtherance of the scheme, but that plan failed when, after successfully attacking one store, a bomb accidentally went off, killing one of the coconspirators.

13

sharing his internet access, would be fair game.   Beyond such an inspection, [the plaintiff] might require still more discovery, including interrogatories, document requests and even depositions." (citations omitted; alterations in original)).

In this regard, the instant matter is factually distinguishable from the *Arista Records* decision.   In that case, the sought after discovery involved an Internet service provider located at a university.   Based on that setting, and at that time, it was almost certain that the end user at an IP address was a particular individual, rather than a wireless network.   The instant case involves broadband Internet service in a largely residential suburban area at a time when wireless is widely available.   Furthermore, it is alleged that each John Doe in the instant case downloaded only a single pornographic film.   By contrast, in *Arista Records*, the plaintiff alleged that a file sharing folder located at the IP address in question contained 236 audio files, containing at least a half-dozen copyrighted songs owned by the plaintiff.   *Arista Records*, 604 F.3d at 122.   In fact, in that case, plaintiffs' investigator was able to "download[] music files from the user's computer," which is not the case here.   *Arista Records LLC v. Does 1-16*, 2009 WL 414060, at *1 (N.D.N.Y. Feb. 18, 2009) *aff'd* 604 F.3d 110 (2d Cir. 2010).   Clearly, the level of activity in *Arista Records* made it far more likely that the subscriber to the IP address would have conducted or at least been aware of the illegal downloading.   In sum, it is not clear that plaintiffs have satisfied this factor.

**Element 3: The Absence of Alternative Means**

As one court observed, "[b]ecause the transactions in question occurred online, the defendants have been elusive and the IP addresses and ISP are the only available identifying information.   Without the requested discovery, there are no other measures Plaintiff can take to identify the personal information for the Doe defendants." *Raw Films, Ltd. v. Does 1-11*, 2012 WL 684763, at *2 (S.D. Cal. Mar. 2, 2012).   Plaintiffs retained a company that provides forensic

14

investigation services including the identification of IP addresses using BitTorrent protocol. *See* Fieser Decl. ¶¶5-6, DE [3-3]. Since plaintiffs have only been able to identify IP addresses used for potential infringement, they have established to the satisfaction of the Court that there are not alternative means available to identify the alleged infringers.

**Element 4: The Need for Subpoenaed Information to Advance the Claim**

Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims. However, not all the information sought is required to advance the claim. For example, in addition to names and addresses, plaintiffs seek both the home telephone numbers and email addresses of the putative John Does, *see Malibu 26,* Proposed Order DE [3-2], information which is clearly not required to proceed with this action. In particular, obtaining the home telephone numbers seems calculated to further plaintiffs' settlement strategies, discussed above, rather than advancing their claims by allowing them to effect service.

**Element 5: Defendants' Expectation of Privacy**

In *Arista Records,* the John Doe defendant, conceding that he had engaged in the alleged improper downloading, sought to quash the subpoena on First Amendment grounds. While recognizing the protected nature of anonymous speech, the Court rejected the challenge, concluding that the "First Amendment does not . . . provide a license for copyright infringement." *Arista Records,* 604 F.3d at 118. In examining this factor, the *Sony Music* court noted "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission." *Sony Music,* 326 F. Supp. 2d at 566-67. Here it is uncertain – indeed, it may be unlikely – that the subscribers sought to be identified downloaded the plaintiffs' copyrighted works. *Cf. Pacific Century,* 2011 WL 5117424, at *2 (denying discovery to protect "innocent internet users"). Thus, this Court cannot conclude with any reasonable certainty that

15

plaintiffs have overcome the expectation of privacy by putative defendants.

## Abusive Litigation Tactics Employed by the Plaintiffs

The most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants. Indeed, this may be the principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves. *See, e.g., K-Beech*, Pl. Mem. in Opp. at 3, DE [22] (arguing that this decision "will affect the rights of intellectual property holders across all segments of society"). While not formally one of the *Sony Music* factors, these facts could be viewed as a heightened basis for protecting the privacy of the putative defendants, or simply grounds to deny the requested discovery on the basis of fundamental fairness.

In an effort to defend its litigation approach, K-Beech argues that "Fed.R.Civ.P. 1 requires that Courts construe the rules to secure the inexpensive determination of every action." Pl. Mem. in Opp. at 11, DE [22]. This Court takes the mandate of Rule 1 quite seriously, and vigorously encourages efforts by litigants to reduce litigation costs through settlement. *See In re Tobacco Litig.*, 192 F.R.D. 90, 95 (E.D.N.Y. 2000) (describing court's "duty to take affirmative action assisting the parties in all possible settlement options"). However, in its argument, plaintiff neglects to observe that Rule 1 requires that disputes should be resolved in a manner that is "**just**, speedy and inexpensive." Fed. R. Civ. P. 1 (emphasis added). In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars. It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive (for the plaintiff). *Cf. On The Cheap, LLC v. Does 1-5011*, -- F.R.D. --,

16

2011 WL 4018258, at *4 (N.D.Cal. Sept. 6, 2011) ("plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create . . . management and logistical problems . . . and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating").

Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." *Patrick Collins, Inc. v. Does 1–3757*, 2011 U.S. Dist. LEXIS 128029, at *6–7 (N.D.Cal. Nov. 4, 2011).

Given the unopposed, sworn account by John Doe #16, which dovetails with the experience of defendants in other actions brought by K-Beech and Patrick Collins, I find counsel for K-Beech has already engaged in improper litigation tactics in this matter, and find it highly probable that Patrick Collins Inc. and Malibu will likely engage in similar tactics if permitted to proceed with these mass litigations. Such conduct cannot be condoned by this Court. This is a persuasive basis to deny the motions for early discovery, as well as an additional basis to grant the motions to quash. *See Pacific Century*, 2011 WL 5117424, at *2 (denying discovery on this basis).

It would be unrealistic to ignore the nature of plaintiffs' allegations – to wit: the theft of pornographic films – which distinguish these cases from garden variety copyright actions. Concern with being publicly charged with downloading pornographic films is, understandably, a common theme among the moving defendants. As one woman noted in *K-Beech*, "having my

17

name or identifying or personal information further associated with the work is embarrassing, damaging to my reputation in the community at large and in my religious community." Mtn to Quash, ¶5, DE [7]. Many courts evaluating similar cases have shared this concern. *See,e.g., Pacific Century Int'l, Ltd. v. Does 1-37,* – F. Supp. 2d –, 2012 WL 1072312, at *3 (N.D. Ill. Mar. 30, 2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle"); *Digital Sin,* 2012 WL 263491, at *3 ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement") *SBO Pictures,* 2011 WL 6002620, at *3 (defendants "whether guilty of copyright infringement or not-would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'" ). This consideration is not present in infringement actions involving, for example, popular music downloads. *See Arista Records,* 604 F.3d at 122, ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music . . . The swappers . . . are ignorant or more commonly disdainful of copyright." *(quoting In re Aimster Copyright Litig.,* 334 F.3d 643, 645 (7th Cir. 2003))).

The Federal Rules direct the Court to deny discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This situation cries out for such relief.

**Joinder is Inappropriate**

In opposing the motions to quash, K-Beech relies heavily on the "swarm joinder" theory championed by plaintiffs here and elsewhere. Rule 20 governs the permissive joinder of parties and states that defendants may be joined in one action where a plaintiff states a right to relief

18

"arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (a) (2) (A) & (B). The argument is that every user who participates in the "swarm" is acting in concert to violate plaintiffs' copyrights.

Highly questionable factual assumptions underlie plaintiffs' contention that these cases satisfy the Rule 20 requisites for joinder. By way of example, Plaintiffs assert that the John Does were "acting in concert with each other," "working together", and "directly interacted and communicated with other members of that swarm." *See, e.g., Malibu 26,* Compl. ¶¶ 10, 33, 34. Much of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program. Exhibit D to the complaints, which allegedly documents the "interactions" between defendants, is a page of machine instructions which clearly demonstrate that the user plays no role in these interactions. Indeed, "[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods., Inc. v. Does 1-188,* 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011).

Moreover, the dates of downloading provided in the complaints – which are often weeks or months apart -- further undermine the allegation that all of the John Does were part of a single swarm. Thus, *even assuming that the John Does are the actual infringers,* the assertion that defendants were acting in concert rests upon a thin reed. *See generally Raw Films, Ltd. v. Does 1-32,* 2011 WL 6840590, at \*2 (N.D.Ga. Dec. 29, 2011) (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32,* 2011 WL 6182025 at \*2 (E.D.Va. 2011) (conduct over

19

a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20").   I
find that plaintiffs have not satisfied the requirement of establishing that defendants participated in
the same "transaction" or "occurrence" within the meaning of Rule 20.

Alternatively, because joinder is permissive, this Court retains the discretion to sever under
Rules 20(b), 21, and 42 (b).   *See Third Degree Films v. Does 1-131*, -- F. Supp. 2d --, 2012 WL
692993, at *3 (D. Ariz. Mar. 1, 2012).   In determining whether to exercise that discretion, the
court should "examine whether permissive joinder would comport with the principles of
fundamental fairness or would result in prejudice to either side."   *On the Cheap*, 2011 WL
4018258, at *2 (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)).
"Courts may also consider factors such as the motives of the party seeking joinder and whether
joinder would confuse and complicate the issues for the parties involved."   *SBO Pictures*, 2011
WL 6002620, at *3.

Plaintiffs identify two common questions of fact in these actions: the plaintiffs' ownership
of copyrights, and the workings of BitTorrent.   By contrast, the half-dozen moving defendants,
even at this preliminary stage, have raised a panoply of individual defenses, including age,
religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of
WiFi equipment and security software utilized; and the location of defendant's router.   The
individualized determinations required far outweigh the common questions in terms of discovery,
evidence, and effort required.   Thus, swarm joinder complicates these actions, resulting in waste
of judicial resources.

Plaintiffs tout the fact that "joinder in BitTorrent copyright infringement cases has been
thoroughly analyzed in forty reported opinions and has been permitted in district courts across the
country."   *K-Beech*, Mem. in Opp. at 1, DE [25].   However, due to plaintiffs' litigation

20

strategy, which includes avoiding review on the merits except at a preliminary, *ex parte* stage,

these determinations were made without any factual record by judges unaware of the highly

individualized, fact specific defenses raised on the motions to quash, or evidence of strong-arm

tactics, both of which strongly militate against allowing joinder in these mass actions.

On this issue, one court has observed:

> In addition to the Rule 20(a)(2) criteria, the court has a parallel duty
> to ensure that permissive joinder "would comport with the
> principles of fundamental fairness or would [not] result in prejudice
> to either side. The court also has discretion to sever an action when
> joinder would confuse and complicate the issues for all parties
> involved. It is likely that Defendants would assert different factual
> and legal defenses, and would identify different witnesses. Case
> management and trial . . . would be inefficient, chaotic, and
> expensive. Joining Defendants to resolve what at least
> superficially appears to be a relatively straightforward case would in
> fact transform it into a cumbersome procedural albatross. These
> difficulties would place tremendous burden on Defendants as well.
> To provide two illustrative examples, each Defendant would have
> the right to be present at every other Defendant's depositions—a
> thoroughly unmanageable and expensive ordeal. Similarly, *pro se*
> Defendants, who most likely would not e-file, would be required to
> serve every other Defendant with a copy of their pleadings and other
> submissions throughout the pendency of the action at substantial
> cost. The court cannot permit a case to proceed in this manner.

*Pacific Century,* 2011 WL 5117424, at *3 (quotations and citations omitted). As such, I find that

principles of fundamental fairness and judicial economy dictate that permissive joinder not be

allowed in these cases.

## By Pursuing Mass Actions, Plaintiffs Improperly Avoid Payment of Filing Fees

The payment of court filing fees is mandated by statute. Specifically, the "district court

shall require the parties instituting any civil action, suit or proceeding in such court, whether by

original process, removal or otherwise, to pay a filing fee of $350." 28 U.S.C. §1914(a). Of that

21

amount, "$190 shall be deposited into a special fund of the Treasury to be available to offset funds

appropriated for the operation and maintenance of the courts of the United States." 28 U.S.C.

§1931(1).

In multidistrict cases considering severance of cases, courts have noted that the filing fee

has:

> two salutory purposes. First, it is a revenue raising measure...
> Second, §1914(a) acts as a threshold barrier, albeit a modest one,
> against the filing of frivolous or otherwise meritless lawsuits. Had
> each plaintiff initially instituted a separate lawsuit as should have
> occurred here, a fee would have been collected for each one. . . .
> Thus, the federal fisc and more particularly the federal courts are
> being wrongfully deprived of their due. By misjoining claims, a
> lawyer or party need not balance the payment of the filing fee
> against the merits of the claim or claims.

*In re Diet Drugs,* 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004); *see also In re Seroquel Prods.*

*Liability Litig.,* 2007 WL 737589, at *2-3 (M.D. Fla. Mar. 7, 2007) (denying reduction of filing

fees, noting the burden on the court and the "gatekeeping feature of a filing fee").

Several courts in similar cases involving BitTorrent protocol have also recognized the

effect of a countenancing a single filing fee. One court described the "common arc of the

plaintiffs' litigating tactics" in these cases:

> ...these mass copyright infringement cases have emerged as a
> strong tool for leveraging settlements–a tool whose efficacy is
> largely derived from the plaintiffs' success in avoiding the filing
> fees for multiple suits and gaining early access en masse to the
> identities of alleged infringers.

*Pacific Century,* 2012 WL 1072312, at *3. Thus, the plaintiffs file a single case, and pay one

filing fee, to limit their expenses as against the amount of settlements they are able to negotiate.

Postponing a determination on joinder in these cases "results in lost revenue of perhaps millions of

dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or

22

misjoin) as many doe defendants as possible." *K-Beech, Inc. v. John Does 1-41,* 2012 WL 773683, at \*5 (S.D. Tex. 2012).

In the four cases before this Court, plaintiffs have improperly avoided more than \$25,000 in filing fees by employing its swarm joinder theory. Considering all the cases filed by just these three plaintiffs in this district, more than \$100,000 in filing fees have been evaded. If the reported estimates that hundreds of thousands of such defendants have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees.

## CONCLUSION

Because K-Beech has failed to allege a valid cause of action, and for all the other reasons set forth herein, the motions to quash in *K-Beech,* CV 11-3995, DE [7], [13], [14], [16], [17], [34], are hereby GRANTED.

For all of the reasons set forth herein, the Court is not inclined to grant the broad early discovery sought by Malibu and Patrick Collins. At the same time, these plaintiffs are allegedly the owners of copyrighted works who should not be left without any remedy. Given the record in this case, however, this must be done in a fashion that will ensure that the rights of all parties are adequately protected. Thus, the Court is prepared to grant these plaintiffs limited early discovery, to wit: the names and addresses (**not** email addresses or phone numbers) of **only** the subscribers designated as John Doe 1 in *Malibu 26, Malibu 11, and Patrick Collins.* Following service of subpoenas, under the terms and conditions set forth below, the identifying information will be provided to plaintiffs at a status conference, with each John Doe 1 present, giving them an opportunity to be heard, to obtain counsel and, if appropriate, request appointment of counsel from

23

this Court's *pro bono* panel.

Plaintiffs' motions for leave to serve third-party subpoenas prior to a Rule 26(f) conference, *Malibu 26,* CV 12-1147, DE [3], *Malibu 11,* CV 12-1150, DE [3], and *Patrick Collins,* CV 12-1154, DE [3], are GRANTED ONLY to the following extent:

> (1) Plaintiffs in *Malibu 26, Malibu 11 and Patrick Collins* may serve subpoenas
> pursuant to Rule 45 of the Federal Rules of Civil Procedure on the ISPs to obtain the
> name, address, and Media Access Control address for each Defendant designated as
> John Doe 1 in each action to whom the ISP assigned an IP address. Under no
> circumstances are plaintiffs permitted to seek or obtain the telephone numbers or
> email addresses of these individuals, or to seek or obtain information about any
> potential John Doe defendant other than John Doe 1. Plaintiff's counsel is directed to
> attach a copy of this Order to the subpoena.
>
> (2) Within seven days of service of each subpoena, the ISPs shall reasonably attempt
> to identify each John Doe 1 and provide him or her with a copy of the subpoena and
> this Order. If any of the ISPs are unable to determine. to a reasonable degree of
> technical certainty, the identity of the user of a particular IP address, it shall so notify
> Plaintiff's counsel.
>
> (3) The ISPs shall have twenty-one (21) days from the service of the subpoena to
> move to quash or otherwise object to the subpoena. Each potential defendant shall
> have fourteen (14) days from receipt of the subpoena from the ISP to move to quash or
> otherwise object to the subpoena.
>
> (4) Absent any motion to quash or objection, **the ISPs shall produce the information
> sought to the Court, not to the Plaintiff** within twenty-one (21) days after notifying

24

each Defendant pursuant to paragraph (2) above.  Said submission shall be made *ex parte* and under seal.  Said information will be provided to counsel for plaintiffs at a status conference to be scheduled by the Court.

(5) Plaintiff may only use the information disclosed pursuant to the subpoenas for the purpose of protecting and enforcing Plaintiffs' rights as set forth in the Complaint.

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGES**

For all of the reasons set forth herein, it is respectfully recommended as follows:

1. That the complaints in *Malibu 26, Malibu 11 and Patrick Collins* be dismissed, *sua sponte* and without prejudice, as to all defendants other than the individual designated as John Doe 1 in each action;

2. That the complaint in *K-Beech* be dismissed, *sua sponte* and without prejudice, in its entirety; and

3. That plaintiffs and their counsel in all four actions be directed that any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper payment of filing fees.  *See, e.g., DIRECTV, Inc. v. Armellino,* 216 F.R.D. 240, 241 (E.D.N.Y. 2003) (Spatt, J.) ("plaintiff is advised that all future claims of this nature must be instituted separately against individual defendants"), (*citing CSC Holdings Inc. v. Tack*, CV 00–3555 (E.D.N.Y. June 16, 2000) (Seybert, J.)).

A copy of this Order and Report and Recommendation is being sent to counsel for the

25

plaintiffs by electronic filing on the date below.   Any objections to the Report and

Recommendation portion must be filed with the Clerk of the Court within 14 days.   *See* 28 U.S.C.

§636 (b)(1); Fed. R. Civ. P. 72;   Fed. R. Civ. P. 6(a) and 6(d).   Failure to file objections within

this period waives the right to appeal the District Court's Order.   *See Ferrer v. Woliver,* 2008 WL

4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997);

*Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
        May 1, 2012

                                        /s/ Gary R. Brown
                                        GARY R. BROWN
                                        United States Magistrate Judge

# Federal Computer Crimes

Attachment 10

## TorrentLawyer™, a Cashman Law Firm, PLLC Blog – Where Computer Law & Criminal Law Meet

**Feeds:**
Posts
Comments

## Florida Judge consolidates and freezes ALL SMALLER BITTORRENT CASES for plaintiff attorney.

February 19, 2012 by houstonlawy3r

*I AM POSTING THIS ENTRY UNEDITED BECAUSE OF THE IMPORTANCE OF ITS CONTENT. I WILL EDIT, ADD LINKS, AND WILL CLEAN UP LATER*

If you were a plaintiff attorney suing thousands of defendants, what would you do if the judge figured out that you were not allowed to practice law?

Terik Hashmi, owner of the Transnational Law Group, LLC just received a note from U.S. District Judge Robert Hinkle essentially *freezing each and every one of his 28 cases filed against John Doe Defendants*, at first glance because he was not licensed to practice law in the state where he lives.

In short, in order for an attorney to gain admission to practice as an attorney in a federal court, the court requires that you be licensed to practice law and be in good standing in the state in which you are licensed. Without delving too deeply into this, on Terik Hashmi's letterhead, it says, "**PRACTIC**
**LIMITED TO FEDERAL COPYRIGHT PROTECTION AND ENFORCEMENT LAW**," which essentially says, "I'm not licensed in this state and this state's bar, but I'm not practicing any state law," which is usually a way out of being charged with the unauthorized practice of law ("UPL"), or practicing law without a license.

Looking a bit deeper, when Terik signs his name, he signs it as "Terik Hashmi, JD, LLM (OH, FL/ND)" suggesting that he is licensed in the State of Ohio and in the U.S. District Court for the Northern District of Florida (the court that issued this ruling).

Florida Judge consolidates and freezes ALL SMALLER BITTORRENT CASES for plaintiff attorney. « Feder.

Taking a look at the Ohio Bar's website
(http://www.sconet.state.oh.us/attysvcs/attyreg/Public_AttorneyDetails.asp?ID=0064329) he appears
to be licensed as an attorney and in good standing. Apparently he was sanctioned three (3) times
during the years 2000-2001, 2002-2003, and 2004-2005 for failing to comply with the continuing legal
education ("CLE") requirements [he just had to pay fines for this], but other than these, I see nothing
that indicates that he is not licensed as an attorney in Ohio.

The problem is that it would NOT be the unauthorized practice of law if he lived in ANOTHER
STATE and he was filing cases in the Northern District of Florida Federal Court as he has been.
However, **because Mr. Hashmi RESIDES IN the State of Florida (meaning he appears to be runni**
**his law practice while being in the physical borders of Florida — hence the "limited to federal**
**practice" notation on his letterhead), the judge is suggesting that he is in violation of the Florida**
**State Bar unauthorized practice of law statutes** (and probably as a result will be in violation of his
Ohio state bar's ethics rules as well).

For this reason, all of his 28 cases [for the time being] have been **merged** into Case No. 4:11-cv-00570
**and are FROZEN**. Lastly, quoting from the judge's order, *"Mr. Hashmi must show cause by March 9,*
*2012, why these cases should not be dismissed on the ground that he has no authority to practice law in Florid*
*or in this court."*

What this means to you is that as things stand, *"...Mr. Hashmi must not attempt to settle any of these*
*cases, must not accept any payment in settlement of any of these cases, and must not take any other action in*
*any of these cases."* In other words, for the time being, Terik Hashmi's cases (listed below) are DEAD.

*THIRD DEGREE FILMS, INC. v. DOES 1-259 (Case No. 4:11-cv-00570)*
*THIRD DEGREE FILMS, INC. v. DOES 1-375 (Case No. 4:11-cv-00572)*
*DIGITAL SIN, INC. v. DOES 1-208 (Case No. 4:11-cv-00583)*
*DIGITAL SIN, INC. v. DOES 1-145 (Case No. 4:11-cv-00584)*
*DIGITAL SIN, INC. v. DOES 1-167 (Case No. 4:11-cv-00586)*
*NEXT PHASE DISTRIBUTION, INC. v. DOES 1-126 (Case No. 4:12-cv-00006)*
*PATRICK COLLINS, INC. v. DOES 1-85 (Case No. 4:12-cv-00007)*
*ZERO TOLERANCE ENTERTAINMENT, INC. v. DOES 1-52 (Case No. 4:12-cv-00008)*
*MEDIA PRODUCTS, INC. v. DOES 1-34 (Case No. 4:12-cv-00024)*
*SBO PICTURES, INC. v. DOES 1-92 (Case No. 4:12-cv-00025)*
*SBO PICTURES, INC. v. DOES 1-97 (Case No. 4:12-cv-00026)*
*METRO INTERACTIVE, LLC v. DOES 1-56 (Case No. 4:12-cv-00043)*
*EVASIVE ANGLES ENTERTAINMENT v. DOES 1-97 (Case No. 1:11-cv-00241)*
*ELEGANT ANGEL, INC. v. DOES 1-87 (Case No. 1:11-cv-00243)*
*ELEGANT ANGEL, INC. v. DOES 1-115 (Case No. 1:11-cv-00245)*
*ELEGANT ANGEL, INC. v. DOES 1-85 (Case No. 1:11-cv-00246)*
*ELEGANT ANGEL, INC. v. DOES 1-77 (Case No. 1:11-cv-00247)*
*MEDIA PRODUCTS, INC. v. DOES 1-175 (Case No. 1:11-cv-00248)*
*DIGITAL SIN, INC. v. DOES 1-150 (Case No. 1:11-cv-00280)*
*DIGITAL SIN, INC. v. DOES 1-131 (Case No. 1:11-cv-00281)*
*EXQUISITE MULTIMEDIA, INC. v. DOES 1-178 (Case No. 1:12-cv-00002)*
*MEDIA PRODUCTS, INC. v. DOES 1-43 (Case No. 1:12-cv-00003)*
*NEXT PHASE DISTRIBUTION, INC. v. DOES 1-93 (Case No. 1:12-cv-00004)*
*PATRICK COLLINS, INC. v. DOES 1-159 (Case No. 1:12-cv-00018)*
*THIRD DEGREE FILMS, INC. v. DOES 1-195 (Case No. 1:12-cv-00019)*
*MEDIA PRODUCTS, INC. v. DOES 1-168 (Case No. 1:12-cv-00020)*
*SBO PICTURES, INC. v. DOES 1-98 (Case No. 1:12-cv-00021)*

*On a personal note, do I really think this is the end of these cases? No, and this is merely because I am still floored that these cases are still around almost TWO YEARS no after they first started to appear. Plaintiff attorneys have come and gone, but the cases still appear to continue [for the most part] unhindered by the various Judges. Obviously many of them have smartened up the the mass extortion scheme being perpetrated on now a hundred or so thousand John Doe defendants, but the fact that the "Plaintiff v. John Doe 1-25" or "Plaintiff v. John Doe 1-250" cases are still around in the first place suggest that the attorney generals and the U.S. attorney generals are doing ABSOLUTELY NOTHING to make these cases go away as they did with the Trevor Law Group automobile repair shop extortion scheme cases (look them up) a few years back in the Northern District of California.*

***Do I think Terik Hashmi is finished? Probably not.*** *I am sure he'll find a way to overcome this obstacle, bu again, I say this only because I'm a bit dark and jaded from the fact that plaintiff attorneys still have their law licenses and are still filing lawsuits long after their cases have been shown to be what they are.*

***For now, we should enjoy our victory*** *and not get overly confident that these cases cannot reappear in the near future. Congratulations to all.*

***Most importantly, THIS IS THE FIRST TIME A JUDGE HAS TAKEN DOWN ALL OF THE SMALLER "JOHN DOE" LAWSUITS AT ONCE. Other plaintiff attorneys should sit up and take notice.***

ADVERTISEMENT

Florida Judge consolidates and freezes ALL SMALLER BITTORRENT CASES for plaintiff attorney. « Feder.

AdChoices [>



Posted in <u>Computer Law</u>, <u>Federal Criminal Law</u>, <u>P2P</u>, <u>Peer-to-peer</u>, <u>Torrent</u> | 25 Comments

# 25 Responses

1. on <u>February 19, 2012 at 6:20 pm</u> | <u>Reply</u> *jmclarkent*
   Another great post. Does that mean that the victims of his actions while practicing Law while unlicensed can go after him for a refund of sorts?

2. on <u>February 19, 2012 at 8:00 pm</u> | <u>Reply</u> *Anonymous*
   Rob, what do you think about the news reported by DieTrollDie that Hashmi had previously signed an affidavit in which he swore not to practice law in Florida and understood that doing s without a license is a 3rd degree felony?

   <u>http://dietrolldie.com/2012/02/14/troll-terik-hashmi-signed-a-cease-and-desist-affidavit-concern
   -his-practice-of-law-in-the-state-of-florida-on-5-aug-2010/</u>

   <u>http://dietrolldie.files.wordpress.com/2012/02/hashmi_3rdd_felony.pdf</u>

   According to a quick Google search a 3rd degree felony in Florida carries a maximum penalty c years in prison and $5000 fine. Considering the large number of cases and Does this guy has fil against I don't see how regulators can let this slide; it's not like this guy skirted the rules one ti: to help a friend out or some other circumstance that might garner sympathy. He clearly made . premeditated decision to commit a felony in order to build a business and profit from his crim Totally shameless and flagrant.

   I'm letting my excitement get ahead of me now, but this strikes me as having the potential to b the lid off this thing with respect to regulators in Florida. This guy has given them a reason to questions about these scams and as long as they are busy tearing Hashmi apart they may just decide to have a look and see what all those guys other guys are up to. Other operations like Prenda that are in Florida but operating through proxies may have opened themselves up to